ARKLA, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 90–3954T.

United States Court of Federal Claims.

Dec. 3, 1992.

Lawrence L. Jones, Shreveport, La., attorney of record for plaintiff; J. Edgerton Pierson, Jr., Frederick R. Parker, Jr., and Blanchard, Walker, O'Quin & Roberts, of counsel.

Kenneth C. Gobetz, Washington, D.C., with whom was Asst. Atty. Gen., Stuart M. Gerson, for defendant.

## MEMORANDUM OF DECISION

HARKINS, Senior Judge.

In its complaint filed November 16, 1990, Arkla, Inc., claimed income tax refunds, and assessed interest, in total amount of $2,615,363.23 paid with respect to taxable years 1981, 1982, 1983, and 1984. Plaintiff's claims are based on alleged wrongful denials by the IRS of entitlements to deductions for recovery property under 26 U.S.C. § 168, and denial of entitlement to investment tax credit under 26 U.S.C. § 38. The recovery property concerns purchases of natural gas in 1981 for use as "cushion gas" in plaintiff's Chiles Dome gas storage facility; tax years 1982, 1983 and 1984 are in suit as a result of the continuation of plaintiff's claimed deductions for "cushion gas" purchased in 1981.

In its answer, defendant asserted collateral estoppel as an affirmative defense to the claims for refunds related to investment tax credit and depreciation for cushion gas injected in the Chiles Dome storage facility. Defendant's collateral estoppel argument is based upon the decision of the Fifth Circuit on plaintiff's claims for refunds for investment tax credit for purchases of "cushion gas" in 1980. *Arkla, Inc. v. United States*, 765 F.2d 487 (5th Cir.1985), *cert. denied*, 475 U.S. 1064, 106 S.Ct. 1374, 89 L.Ed.2d 601 (1986) (*Arkla I*). The Fifth Circuit held that the portion of cushion gas that was recoverable was not subject to depreciation and that Arkla was not entitled to investment tax credit for the recoverable cushion gas.

The case came before the court for argument on November 24, 1992, on cross-motions for partial summary judgment, based on stipulated facts. At the close of argument, defendant's motion for partial summary judgment was allowed and plaintiff's cross-motion for partial summary judgment was denied.

Pursuant to RCFC 56(d), the parties in this case filed proposed findings of uncontroverted fact that essentially are restatements of the facts which were stipulated in the 1980 litigation in Civil Action No. 82–2437 in the District Court for the Western District of Louisiana. Plaintiff's proposed

findings of fact are those found by the District Court in its Memorandum Ruling dated August 6, 1984. Defendant's proposed findings of fact consist of a repetition of the factual context as described by the Fifth Circuit in the appeal.

The Memorandum Ruling of the District Court contained definitions of relevant terms that had been stipulated by the parties. These definitions included:

1. "Cushion gas" is a natural gas contained in a gas storage facility which provides a minimum pressure for the facility. This gas is sometimes referred to in the gas industry as "base gas." In *Arkla I*, the Fifth Circuit added the following supplement: "Cushion gas is physically indistinguishable from the natural gas delivered to customers; the term simply refers to the volume of gas required to maintain the desired pressure in the reservoir." 765 F.2d at 488.

2. "Working gas" is a natural gas contained in a gas storage facility which is stored for delivery into a gas transmission system at times of high demand, principally during the winter heating season, and which will be replaced at times of low demand, principally during the summer season. This gas is sometimes referred to in the gas industry as "top gas."

3. "Native gas" is natural gas contained in a gas storage facility which was present in an underground reservoir at the time such reservoir was acquired or converted for use as a part of a gas storage facility.

4. "Injected gas" is natural gas contained in a gas storage facility which has been injected into the facility from some outside source.

5. "Non-recoverable gas" is natural gas contained in a gas reservoir which cannot be economically withdrawn.

The record contains a large volume of facts the parties have stipulated which need not now be reiterated. For disposition of the cross-motions, salient facts are summarized in the following description.

Arkla, Inc. is an integrated natural gas company, within the meaning of the Natu-

ral Gas Act, subject to the jurisdiction of the Federal Energy Regulatory Commission ("FERC"). Plaintiff provides gas service to more than 650,000 customers in its five state service area of Arkansas, Kansas, Louisiana, Oklahoma, and Texas. In 1976, plaintiff made an extensive reevaluation and update of its gas storage needs, and in January 1977, engaged the services of Keplinger and Associates, Inc., Tulsa, Oklahoma, to assist with the search and evaluation of the potential gas storage prospects.

Keplinger's recommended plan to meet Arkla's storage goals included the purchase of the Chiles Dome reservoir, a natural underground gas reservoir in Eastern Oklahoma, and the construction and development of a gas storage facility to be connected with Arkla's existing transmission system. To this end, Arkla acquired from the surface owners the right to store gas in the formation, as well as surface rights for drilling wells, laying pipelines, and constructing gathering and transmission facilities.

Prior to its filings with FERC and the Oklahoma Corporation Commission, plaintiff had prepared extensive studies to determine the most economical method of constructing the gas storage facility within the parameters of approximately 11.5 to 12 BCF of working gas, minimum daily deliverability of 125 MMCF and at least a pressure of 610 pounds per square inch, for injection into plaintiff's transmission line. Those studies showed, as refined to the date of filing with the FERC for its certification, that the lowest cost of service per MCF was obtained by the utilization of an average minimum wellhead flowing pressure of 355 psig, which required 14 BCF of cushion gas for the flow rates involved, and the availability of 6,750 horsepower of surface compression.

The largest single item of cost for the construction of the Chiles Dome gas storage facility, regardless of the wellhead pressure considered, was the cushion gas. In its final design, the Chiles Dome gas storage facility was to store 12 BCF of working gas with minimum daily delivera-

bility of 133 MMCF to provide for approximately 90 days of peak demand.

On August 7, 1980, plaintiff notified FERC that construction of the Chiles Dome gas storage facility was completed on July 30, 1980, and placed in service on that date for the initial injection into the gas storage facility. During calendar year 1980, plaintiff purchased at a cost of $9,689,239.16 and injected into the Chiles Dome 5.98 BCF of cushion gas as part of that storage facility, and purchased at a cost of $328,-305.20 the 3.5 BCF of native gas remaining in the storage reservoir.

The 5.98 BCF of cushion gas purchased and injected into Chiles Dome by plaintiff during 1980 is classified for FERC accounting purposes as recoverable cushion gas and, pursuant to the FERC Uniform System of Accounts, the $9,689,239.16 cost thereof is included in FERC Account # 117—Gas Stored Underground–Noncurrent, which is one of the "Utility Plant" accounts.

The 3.5 BCF of native gas remaining in Chiles Dome and purchased by plaintiff in 1980 was classified for FERC accounting purposes as consisting of 512,774 MCF of recoverable native gas and 2,986,607 MCF of non-recoverable native gas. The $134,-642.29 cost of the recoverable native gas is included in FERC Account # 117—Gas Stored Underground–Noncurrent and the $193,662.91 cost of the non-recoverable native gas is included in FERC Account # 352.3—Non–Recoverable Gas, which account is also one of the "Utility Plant" accounts.

During the year 1981, plaintiff invested $8,349,341.67 in natural gas which was injected into the Chiles Dome gas storage facility to serve as cushion gas. As employees of the plaintiff's tax department made some incorrect assumptions with regard to gas accounting data pertaining to this cushion gas, plaintiff, for purposes of calculating the investment tax credit and cost recovery deductions, used only the amount of $8,214,699.38 as the cost of the cushion gas purchased and injected in 1981. The cushion gas acquired in 1981 was classified as recoverable cushion gas for FERC accounting purposes.

The cushion gas (both recoverable and non-recoverable) is an integral part of the Chiles Dome gas storage facility and is classified pursuant to the FERC Uniform System of Accounts as part of "Utility Plant." Plaintiff was required to pay and paid fees to FERC, under the provisions of 18 C.F.R. § 159.2(a) and § 159.2(b), based on the cost of construction of the Chiles Dome facility, including the cost of the native and injected cushion gas, both recoverable and non-recoverable. The cost of cushion gas (both recoverable and non-recoverable) constitutes a part of the gas utility plant and is included as such in the rate base under the provisions of 18 C.F.R. § 154.63(f).

Both recoverable and non-recoverable cushion gas serve the same function in a gas storage facility. Cushion gas (both recoverable and non-recoverable) and surface compression serve the same general function in a gas storage facility. The cushion gas contained in the Chiles Dome gas storage facility (both recoverable and non-recoverable) is tangible property used as an integral part of furnishing gas services and the transportation of gas; additionally, it is a part of a facility the whole of which constitutes a natural gas bulk storage facility used by plaintiff in its business of furnishing gas service. The cushion gas contained in the Chiles Dome gas storage facility (both recoverable and non-recoverable) is not a building or its structural component.

With respect to the cushion gas purchased and injected into its Chiles Dome facility during 1981, plaintiff claimed, on its consolidated corporate income tax return for the year ending December 31, 1981, investment tax credit in the amount of $944,690.32 under the provisions of 26 U.S.C. § 38 and a deduction in the amount of $657,175.95 under the accelerated cost recovery provisions of 26 U.S.C. § 168. Also with respect to the cushion gas injected into Chiles Dome in 1981, plaintiff claimed accelerated cost recovery deductions in the amounts of $1,150,057.91,

$985,763.93 and $821,469.94 on its consolidated corporate income tax returns filed for the years 1982, 1983 and 1984, respectively. Upon audit of plaintiff's tax returns for the years here at issue, the Internal Revenue Service proposed to disallow the investment tax credit and cost recovery deductions which plaintiff had claimed. Plaintiff then prepaid the asserted deficiencies and timely filed claims for refund, which either were denied or were not acted upon within 6 months after having been filed.

The cross-motions for partial summary judgment address plaintiff's entitlement to depreciation deductions and investment tax credit for the recoverable cushion gas it purchased in 1981 in connection with its operation of the Chiles Dome gas storage facility. Material facts are not in dispute. Disposition by summary judgment is appropriate.

Plaintiff's motion for partial summary judgment contends that the entire volume of the cushion gas employed in the Chiles Dome gas storage facility (whether economically recoverable upon abandonment of the facility or not) constitutes "tangible property of a character subject to the allowance for depreciation" and thus constitutes "recovery property" within the meaning of I.R.C. § 168. Economically recoverable cushion gas, according to plaintiff, merely represents the salvage value of the cushion gas as a whole, and salvage value is irrelevant for purposes of determining the deduction provided by I.R.C. § 168. Availability of the investment tax credit provided by Section 38 turns upon the determination under I.R.C. § 168. On this sequence, plaintiff contends it is entitled to the cost recovery deductions and the investment tax credit with respect to the entire volume of its cushion gas placed in service after 1980.

With respect to the collateral estoppel defense, plaintiff contends the holding in *Arkla I* is inconsistent with prior holdings of this court, citing *Transwestern Pipeline Co. v. United States*, 225 Ct.Cl. 399, 639 F.2d 679 (Ct.Cl.1980), and is erroneous as a matter of law in the conclusion that the economically recoverable and non-recoverable cushion gas should be treated as separate assets. Further, plaintiff argues that collateral estoppel does not preclude relitigation of the issues decided in *Arkla I* because the facts of the two cases are different, and because the law in this case differs from that there at issue. Different tax years are involved, and more importantly, this case involves the interpretation of different statutes than in *Arkla I*. Effective in 1981, I.R.C. § 48(a)(1) was amended, and I.R.C. § 168 was added.

Defendant's motion for partial summary judgment contends the facts in this case are identical to those considered in *Arkla I*, and that plaintiff's objections to the application of collateral estoppel here are without merit. Defendant argues: (1) the applicable precedent holds that the mere fact that a different tax year is in suit does not preclude application of collateral estoppel; and (2) the amendment of I.R.C. § 48(a)(1) and the addition of I.R.C. § 168 are not relevant to the question of whether recoverable cushion gas is property eligible for depreciation, which is the dispositive issue in the instant case and was the dispositive issue in *Arkla I*.

Enactment of the Economic Recovery Tax Act of 1981, Pub.L. No. 97–34, 97th Cong., 95 Stat. 172 (ERTA) resulted in amendment of I.R.C. § 48(a)(1) and the addition of I.R.C. § 168, effective for property placed in service after December 31, 1980. The investment tax credit allowed by I.R.C. § 38 applies to property as defined in I.R.C. § 48(a)(1), and new I.R.C. § 168 provided the Accelerated Cost Recovery System (ACRS) which applies to "recovery property" as defined in I.R.C. § 168(c).

Before the 1981 amendments, Section 38 property was defined in I.R.C. § 48(a)(1)(B)(iii) as follows:

**§ 48. Definitions; special rules**

**(a) Section 38 property.—**

**(1) In general.—**Except as provided in this subsection, the term "section 38 property" means— ...

(B) other tangible property (not including a building and its structural components) but only if such property— ...

(iii) constitutes a facility used in connection with any of the activities referred to in clause (i) for the bulk storage of fungible commodities (including commodities in a liquid or gaseous state), or ...

Such term includes only property with respect to which depreciation (or amortization in lieu of depreciation) is allowable and having a useful life (determined as of the time such property is placed in service) of 3 years or more.

The 1981 amendments changed the final clause to read as follows:

Such term includes only recovery property (within the meaning of section 168 without regard to any useful life) and any other property with respect to which depreciation (or amortization in lieu of depreciation) is allowable and having a useful life (determined as of the time such property is placed in service) of 3 years or more. The preceding sentence shall not apply to property described in subparagraph (F) and, for purposes of this subpart, the useful life of such property shall be treated as its normal growing period.

The ACRS, I.R.C. § 168, was enacted to stimulate investment in assets that contribute to economic expansion by increasing the depreciation deductions available to taxpayers. I.R.C. § 168(a) provides:

§ 168. **Accelerated cost recovery system**

(a) **Allowance of deduction.**—There shall be allowed as a deduction for any taxable year the amount determined under this section with respect to recovery property.

Recovery property is defined generally in I.R.C. § 168(c) as follows:

(c) **Recovery property.**— For purposes of this title—

(1) **Recovery property defined.**— Except as provided in subsection (e), the term "recovery property" means tangible property of a character subject to the allowance for depreciation—

(A) used in a trade or business, or

(B) held for the production of income.

Certain property is excluded from ACRS. Recovery property does not include property placed in service before January 1, 1981, and does not include property the taxpayer elects to exclude. I.R.C. § 168(e). In the ACRS procedures, recovery property is assigned to one of five classes: 3 year property; 5 year property; 10 year property; 15 year real property; and 15 year public utility property. I.R.C. § 168(c)(2). The amount of allowable cost deductions with reference to each class is set forth in tables based on the periods the property was placed in service. I.R.C. § 168(b). For purposes of ACRS, salvage value is irrelevant. Section 168(f)(9) provides:

(9) **Salvage value.**— No salvage value shall be taken into account in determining the deduction allowable under subsection (a).

I.R.C. § 48 does not provide a definition of "property with respect to which depreciation is allowable." I.R.C. § 167 provides the statutory definition "property with respect to which depreciation is allowable." The relevant portion of § 167(a), as in effect in 1980 and the years in suit, provided:

(a) **General Rule.**— There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

(1) of property used in the trade or business;

(2) of property held for the production of income.

In the case of recovery property (within the meaning of section 168), the deduction allowable under section 168 shall be deemed to constitute the reasonable allowance provided by this section, except with respect to that portion of the basis of such property to which subsection (K) applies.

In 1981, I.R.C. § 167(a) was amended to prohibit a taxpayer from deducting the cost of an asset under both Section 167 and Section 168. This change does not affect the question of whether recoverable cush-

ion gas is eligible for depreciation or the investment tax credit.

Treasury Regulation § 1.167(a)–2 provides in pertinent part:

Tangible property.—The depreciation allowance in the case of tangible property applies only to that part of the property which is subject to wear and tear, to decay or decline from natural causes, to exhaustion, and to obsolescence.

Rule 56 of the United States Court of Federal Claims requires judgment if there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." The movant has the burden of demonstrating that there are no genuine issues of material fact. *Adickes v. Kress*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In this case, each movant has met its burden by demonstrating that there is an absence of evidence on an essential element of the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Sweat Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed.Cir.1987). The cross-motions for partial summary judgment require the court to evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987).

.    .    .    .    .

*Collateral Estoppel Issue*

■ Defendant asserts collateral estoppel as an affirmative defense. Under the doctrine of collateral estoppel, issue preclusion, "issues which are actually and necessarily determined by a court of competent jurisdiction are conclusive in a subsequent suit involving the parties to the prior litigation." *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed.Cir.1983). Four elements are necessary for collateral estoppel to block a subsequent litigation: (1) identical issues, (2) actual litigation of those issues, (3) a determination of the issue which was necessary for the prior court's judgment, and (4) representation of the parties by counsel in the

prior litigation. *Mother's Restaurant*, 723 F.2d at 1569. Plaintiff does not contest the applicability of parts two through four of the collateral estoppel test.

Arkla cites *Comm'r. v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948) for the law of collateral estoppel with respect to tax cases. The *Sunnen* court explained that collateral estoppel:

avoid[s] an undue disparity in the impact of income tax liability. A taxpayer may secure a judicial determination of a ... matter which may recur without substantial variation for some years thereafter. But a subsequent modification of the significant facts or a change or development in the controlling legal principles may make that determination obsolete or erroneous, at least for future purposes.

*Sunnen*, 333 U.S. at 599, 68 S.Ct. at 720. The Court there stated that collateral estoppel in tax cases should be limited to situations in which the second case involves matters "identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged." *Sunnen*, 333 U.S. at 599, 68 S.Ct. at 720. Arkla contends that both the facts and law of this case differ from those in *Arkla I*, and argues that collateral estoppel is not applicable.

■ Plaintiff correctly states that *Arkla I* concerned the availability of an investment tax credit for cushion gas injected prior to 1981, while the present case involves the availability of an ACRS deduction and an investment tax credit for cushion gas injected in 1981 forward. The factual differences between the two cases, however, must be material and have legal significance to preclude the operation of the collateral estoppel doctrine. *Hercules Powder Co. v. United States*, 167 Ct.Cl. 639, 644, 337 F.2d 643 (1964); *see Montana v. United States*, 440 U.S. 147, 162, 99 S.Ct. 970, 978, 59 L.Ed.2d 210 (1979) (the court should examine whether the "factual and legal context in which the issues of the case arise has not materially altered").

The difference in the purchase years of cushion gas and the additional ACRS issue

present in this case is not necessarily material. *See Murray v. United States*, 426 F.2d 376, 381 (Ct.Cl.1970) collateral estoppel "applies in a later year to an issue which has been litigated in an earlier year" (citing *Sunnen*, 333 U.S. at 598–600, 68 S.Ct. at 719–720). Collateral estoppel avoids repetitious litigation on the "identical question of the statute's application to the taxpayer's status." *McMullan v. United States*, 686 F.2d 915, 918, 231 Ct.Cl. 378 (Ct.Cl.1982) (quoting *Tait v. Western Md. Ry.*, 289 U.S. 620, 624, 53 S.Ct. 706, 707, 77 L.Ed. 1405 (1933)). As long as the issues are the same, the fact that they arose in a different tax year will not prevent the operation of collateral estoppel. The outcome in this case turns on whether recoverable cushion gas is depreciable and therefore eligible for an investment tax credit or an ACRS deduction. The result in *Arkla I* also depended on whether recoverable cushion gas was depreciable.

Plaintiff is accurate in its argument that the law applicable in *Arkla I* has changed since the tax year at issue in that decision. I.R.C. § 168 became effective December 31, 1980 and section 48(a)(1) was amended. I.R.C. § 168 allows deductions under the ACRS for "tangible property of a character subject to the allowance for depreciation." I.R.C. § 168(c)(1). Whether property is subject to an allowance for depreciation, however, still is determined by I.R.C. § 167(a).

Under *Sunnen*, there must have been a change in the controlling law. The legal principles applicable to the decision in *Arkla I* remain the same. Plaintiff claims that section 168(f)(9) changes the law because it states that "No salvage value shall be taken into account in determining the deduction allowable under subsection (a)." This law does not affect the threshold issue of whether certain property is depreciable. Consideration of salvage value's role in calculating the ACRS deduction is not an issue which defendant seeks to collaterally estop.

The linchpin of *Arkla I* and the decision in this case is whether the recoverable cushion gas is depreciable. The statute

determining this issue, I.R.C. § 167, remains as before the 1981 amendments. Legislative history states that ACRS "does not change the determination under prior law as to whether property is depreciable or nondepreciable". General Explanation of The Economic Recovery Act of 1981 (Staff Report of the Joint Committee on Taxation, Dec. 29, 1981, p. 1451). The issues present in this case do not require the court to interpret these new and amended statutes unless the court finds the cushion gas to be subject to an allowance for depreciation. Therefore the law controlling the outcome of the depreciation issue is identical in *Arkla I* and *Arkla II*.

The *Arkla I* decision regarding the depreciable status of recoverable cushion gas collaterally estops this court from considering the same issue. The difference in tax years does not prevent collateral estoppel. Given that recoverable cushion gas is not depreciable, I.R.C. §§ 48 and 168 do not apply. These sections only affect the amount of the ACRS deduction or investment tax credit once an asset is subject to an allowance for depreciation.

*ACRS Recovery Property*

■ Defendant contends, alternatively, it is entitled to partial summary judgment because recoverable cushion gas is not I.R.C. § 168 "recovery property" in that it is not property of a character subject to the allowance for depreciation.

The parties agree that the availability of an investment tax credit and ACRS deductions depends on whether cushion gas is recovery property under § 168. Plaintiff argues that all of its cushion gas is recovery property. The IRS ruled that economically recoverable cushion gas would not be recovery property because it was not subject to an allowance for depreciation.

Before ACRS and at the time of the *Arkla I* decision, depreciation reflected the physical exhaustion or economic obsolescence of an asset. The cost of an item less estimated salvage value was distributed over the estimated useful life of the asset. ACRS standardized the useful life to decrease discrepancies among individual cases and eliminated the consideration of

salvage value. Taxpayers' deductions under ACRS now relate to an asset's total cost.

Plaintiff alleges that the court in *Arkla I* and the IRS incorporated the concept of salvage value into their decisions by characterizing the economically recoverable part of the cushion gas as nondepreciable. Since salvage value is irrelevant under ACRS, plaintiff argues that the total cost of the entire cushion gas, one asset, is subject to ACRS deductions for depreciation.

Salvage value is measured by economic recoverability. *Burnet v. Niagara Falls Brewing Co.*, 282 U.S. 648, 51 S.Ct. 262, 75 L.Ed. 594 (1931). Treasury Reg. § 1.167(a)–1(a) requires the depreciation allowance plus the salvage value to equal cost of property. The depreciation deduction was reduced by accounting for the salvage value; the existence of a salvage value, however, was not determinative of whether the asset was depreciable in the first place. The *Arkla I* decision did not discuss the salvage value of cushion gas. The court, however, did not have to consider salvage value in classifying an asset as depreciable or nondepreciable.

Defendant cites Revenue Ruling 75–233 as support for a division of cushion gas into recoverable and unrecoverable gas. The Ruling states that unrecoverable gas: "will remain permanently in place in the reservoir pore space at conditions of reservoir pressure and saturation initially projected for reservoir abandonment." Rev. Rul. 75–233, 1975–1 C.B. 95, 96. Recoverable cushion gas will not be permanently in the reservoir after abandonment. It will be sold. The Revenue Ruling in effect states that only non-recoverable gas qualifies as depreciable cushion gas.

Recoverable gas does not fit within the IRS or FERC definition of cushion gas. The taxpayer that was the subject of the Revenue Ruling had compiled engineering data and performance history of the gas and determined that a certain amount of gas would be unrecoverable. The IRS only allowed depreciation of that amount. Plaintiff did a similar analysis to ascertain the recoverable amount of gas. Recoverable gas by its nature is not depreciable because it will not become obsolete and its cost can be fully recovered by resale. Since unrecoverable cushion gas has no salvage value, the *Arkla I* court analyzed the cushion gas correctly by categorizing it as two separate assets and by not calculating a salvage value.

The *Arkla I* court treated the economically recoverable cushion gas as a separate asset. In *Hawaiian Independent Refinery, Inc. v. United States*, 697 F.2d 1063 (Fed.Cir.1983), the court held that all component parts of a facility functioned as a single property. The case at bar is similar because non-recoverable cushion gas is an integral part of the gas storage facility.

Plaintiff asserts that it is impossible to distinguish between recoverable and non-recoverable gas molecules, so there is really only one asset. Arkla contends that the purpose of placing recoverable and unrecoverable gas in separate accounts was merely to comply with the accounting classifications required by FERC. The FERC accounting rules, however, are "presumptively controlling" for tax purposes. *Transwestern*, 225 Ct.Cl. at 414, 639 F.2d 679 (citing *Comm'r v. Idaho Power Co.*, 418 U.S. 1, 15, 94 S.Ct. 2757, 2765, 41 L.Ed.2d 535 (1974)). Plaintiff admits that "based on engineering studies of the reservoir characteristics, the estimated extraction cost and the then prevalent cost of gas, it was determined that 2,986,607 MCF of the total 14 BCF of cushion gas could not be economically withdrawn upon abandonment of the facility." Accordingly, the categories of recoverable and non-recoverable cushion gas are not limited to FERC accounting mandates.

*Transwestern Pipeline Co. v. United States*, 225 Ct.Cl. 399, 639 F.2d 679 (1980), is binding precedent for this court. *See South Corp. v. United States*, 690 F.2d 1368 (Fed.Cir.1982). In *Transwestern*, the line pack was determined to be depreciable and not an item of inventory. The court observed that line pack gas serves essentially the same function as cushion gas in that both are necessary to provide proper

 

pressure in the gas storage facility or pipeline. Only a small portion of the line pack, however, was seen as economically recoverable. The useful lives of line pack and cushion gas are equivalent to the useful life of the gas storage facility.

In *Transwestern*, because the line pack gas had some salvage value, the amount of the depreciation deduction was reduced. "[I]t reasonably appeared at the time when the line pack was injected into the plaintiff's pipeline system that the line pack would have some minor salvage value at the end of the system's useful life." *Transwestern*, 225 Ct.Cl. at 414–15, 639 F.2d 679. The court allowed a depreciation deduction based on the obsolescence of line pack gas, even though some of it was salvageable. Plaintiff asserts that the *Transwestern* analysis would need to be modified under the ACRS system. The deduction amount, according to plaintiff, would be based on the entire cost of the line pack.

The analysis in *Transwestern* referring to line pack is not relevant to the cushion gas at issue in this case. The *Transwestern* court describes the similarity of cushion gas and line pack gas in part by expressing that,

> both the line pack gas in a pipeline and the cushion gas in an underground storage reservoir are unrecoverable, except to a *minor* extent, at the end of the useful life of the respective facilities.

*Transwestern*, 225 Ct.Cl. at 411, 639 F.2d 679 (emphasis added). In the *Transwestern* analysis, if cushion gas were treated as line pack it would be economically feasible to recover only "between 3 percent and 20 percent" upon the ultimate abandonment of the storage facility. *Transwestern*, 225 Ct. Cl. at 415, 639 F.2d 679. In this case, plaintiff admits that approximately 80 percent of the cushion gas "could be economically withdrawn upon abandonment of the facility." With the great majority of cushion gas being recoverable in Arkla's situation, it is not similar to the concept of cushion gas as described in *Transwestern*.

Defendant distinguishes *Transwestern* because, in *Transwestern*, the "vast majority" of the line pack gas was non-recoverable while here there is not such a disparity between the amounts. The fact that line pack and cushion gas have different salvage values should not necessarily affect whether their costs are depreciable. There is no regulation requiring a certain percentage salvage value in order to be a depreciable asset. However, the definition of cushion gas in *Transwestern* does not accurately describe the cushion gas at issue in the case at bar.

On the basis of the foregoing, defendant's motion for partial summary judgment on the cushion gas issue was allowed and plaintiff's cross-motion for partial summary judgment was denied.