**WASHINGTON ENERGY COMPANY,**
**Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–**
**Appellee.**

**No. 96–5016.**

United States Court of Appeals,
Federal Circuit.

Aug. 28, 1996.

Harry E. Grant, Jr., Graham & James LLP/Riddell Williams P.S., Seattle, Washington, argued, for plaintiff-appellant.

Jonathan S. Cohen, Attorney, Tax Division, Department of Justice, Washington, D.C., argued, for defendant-appellee. With him on the brief were Loretta C. Argrett, Assistant Attorney General, Gary R. Allen, Chief, Appellate Section, and Thomas J. Clark, Attorney.

Before RICH, Circuit Judge, SKELTON, Senior Circuit Judge, and MICHEL, Circuit Judge.

MICHEL, Circuit Judge.

In this tax refund action, Washington Energy Co. ("Washington") appeals from the June 16, 1993, order of the United States Court of Federal Claims, No. 90–4009T, holding in favor of the government on the parties' cross-motions for summary judgment. The trial court's order became final when, on September 7, 1995, the trial court entered a judgment of $15,256.00 plus interest against Washington. The appeal was submitted for decision after oral argument on August 7, 1996. Because a decision in Washington's favor would create a direct conflict with the Fifth Circuit's decision in *Arkla, Inc. v. United States,* 765 F.2d 487 (5th Cir.1985) ("*Arkla I*"), *cert. denied,* 475 U.S. 1064, 106 S.Ct. 1374, 89 L.Ed.2d 601 (1986), and because Washington has failed to carry its burden of demonstrating that either the controlling portion of the tax code and the Treasury Regulation implementing it or our precedent

leaves us no alternative but to rule in its favor, we affirm.

*Background*

The legally operative facts are not in dispute. Washington Natural Gas Co. ("WNG"), a wholly-owned subsidiary of Washington, is an intrastate public utility regulated by the Washington Utilities & Transportation Commission. It supplies residential, commercial, and industrial natural gas service to customers in Washington State. WNG, along with Northwest Pipeline Corp. and Washington Water Power Co., owns and operates a natural gas aquifer storage reservoir known as Jackson Prairie.

An aquifer storage reservoir such as Jackson Prairie has four main components: (1) the reservoir itself, with its impermeable rock cap and water base; (2) gas turbine compressors; (3) the wells used for injecting and withdrawing the natural gas; and (4) "cushion gas," the large volume of natural gas that functions to maintain the ambient pressure of the reservoir at the compressors' minimum operating pressure of approximately 400 lbs./sq.in. During 1981 and 1982, the years at issue, the Jackson Prairie reservoir stored about 32 billion cubic feet (bcf) of natural gas. About 12.8 bcf of that amount was "working gas," *i.e.,* gas injected into or withdrawn from the facility during normal operations, and about 19.2 bcf of the total amount was cushion gas.

Under industry standards, the cushion gas in the Jackson Prairie reservoir was further classified as recoverable cushion gas and nonrecoverable cushion gas.[1] Recoverable cushion gas, as the name implies, is the cushion gas that may be economically recovered at the end of the useful life of the reservoir; because it can be recovered, its owner can resell it or put it to other use. Nonrecoverable cushion gas, by contrast, cannot be economically recovered from the reservoir and thus remains there when the

1. Under a uniform system of accounts established by the Federal Energy Regulatory Commission's regulations in effect in 1981 and 1982, natural gas companies were required to account for "recoverable gas purchased or produced by the utility which is stored in depleted or partially depleted gas or oil fields" as "Gas stored underground Noncurrent." 18 C.F.R. Part 201, Account 117. Nonrecoverable gas in underground reservoirs, on the other hand, was required to be accounted for as "Gas plant in service." 18 C.F.R. Part 201, Account 101 & 352.3.

reservoir is taken out of service.[2] Engineering consultants retained by the owners of the Jackson Prairie reservoir estimated that 85–90% of the cushion gas in the reservoir was recoverable.

In June 1982, Washington filed a consolidated federal corporate income tax return for itself and WNG covering the taxable year ending September 30, 1981. In that return, Washington claimed both a depreciation deduction and investment tax credit for the entirety of the cushion gas, both recoverable and nonrecoverable, supplied to the Jackson Prairie facility. In June 1983, Washington claimed the same deduction and credit on the cushion gas for the taxable year ending September 1982.

Upon audit, the IRS disallowed those portions of the depreciation deductions and investment tax credits claimed with respect to the *recoverable* portion of the cushion gas. Washington paid the resulting tax deficiencies for both years and later filed amended returns and claimed refunds for taxes paid as a result of the disallowed deductions and credits. In December 1988, the IRS disallowed the refund claims.

Washington filed suit for the refund in the Court of Federal Claims in December 1990. Both parties moved for summary judgment in 1992, having stipulated to the facts just recounted. Both parties agreed that the resolution of Washington's claim turned entirely on whether the property in question—cushion gas, recoverable and/or nonrecoverable—is subject to "depreciation" as that term is defined in 26 U.S.C. § 167(a) for the years in question. Section 167(a) set forth the depreciation deduction, and 26 U.S.C. § 38 set forth the investment tax credit, limiting the latter to property depreciable under section 167(a). Section 167(a) provided, in relevant part, that "[t]here shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear, and tear (including a reasonable allowance for obsolescence) ... of property used in the trade or business." The Treasury Regulation interpreting section 167(a), provided, in relevant part, that "[t]he

depreciation allowance in the case of tangible property applies only to that part of the property which is subject to exhaustion, to decay or decline from natural causes, to exhaustion, and to obsolescence." 26 C.F.R. § 1.167(a)(2).

On the parties' cross-motions for summary judgment, the trial court concluded that Washington was not entitled to the depreciation deduction or the investment tax credit for the recoverable portion of its cushion gas, adopting the government's position in the case. Ruling from the bench, the trial court reasoned as follows:

> Now the issue is whether the cushion gas has an element that is properly of a character subject to the allowance for depreciation pursuant to Section 167. And does it have another element which is not subject to the allowance for depreciation. Plaintiff contends that the value of the cushion gas after it is recoverable is irrelevant to whether there is an entitlement to a depreciation deduction....
>
> ...
>
> Together the recoverable and non-recoverable cushion gas create and preserve the storage reservoir aquifer, and maintain the needed minimum pressure to deliver the working gas from the reservoir to a pipeline. Defendant does not contest the crucial role recoverable cushion gas performs in Plaintiff's business.... What we must look at as a result is whether the cushion gas is subject to exhaustion, wear and tear, or obsolescence. My examination of the Internal Revenue Code and the case law brings me to the conclusion that recoverable cushion gas is not subject to depreciation under IRC Section 167. Section 167 explicitly requires that for a property to be depreciable, it must be subject to exhaustion, wear and tear, or obsolescence. In no fashion has Plaintiff demonstrated that the recoverable cushion gas is subject to these factors.
>
> It was clear that from 85 to 90 percent of the cushion gas contained in the reservoir will be made available for its intended

---

**2.** For reasons it does not explain, Washington refers to "salvageable" and "nonsalvageable" cushion gas, rather than "recoverable" and "nonrecoverable" cushion gas, in its briefs on appeal. We choose instead to follow the convention of the earlier cases.

use when the facility is abandoned. The distinction between the function of cushion gas and the question, the issue of salvageability, or the salvage value for depreciation purposes, was considered in ARKLA II, and ARKLA II, in my view, determines, controls the decision in this case.[3] I am allowing the depreciation deductions and investment tax credits for non-recoverable cushion gas, and disallowing such treatments for recoverable cushion gas are [sic, is] fully reconcilable, despite the fact that these properties are physically indistinguishable. The non-recoverable cushion gas has a measurable useful life, which is equal to the useful life of the Jackson Prairie storage facility. By contrast, recoverable cushion gas will still have a useful life when the Jackson Prairie facility's useful life expires. So, in an abandonment of the Jackson Prairie facility the non-recoverable cushion gas will become obsolete. The recoverable cushion gas will serve further economic purposes for the Plaintiff. This divergence requires different tax treatment for depreciation purposes.

■ Washington appeals, contending that (1) "[t]he trial court's bifurcation of cushion gas into two separate assets (one asset which is made up entirely of salvage value, and one which has no salvage value at all) for purposes of depreciation is unsupported by the statutes or regulation at issue here", (2) "applying the analysis urged by the government would obliterate an entire section of the statute at issue—the section dealing with salvage value (I.R.C. § 168(f)(9))," [4] and (3) "[e]ven though salvageable cushion gas is, by definition, cushion gas that will not be exhausted, that does not mean that salvageable cushion gas is not *subject to* exhaustion, as required

by" section 1.167(a)(2) of the Treasury Regulations.

*Standard of Review*

■ The sole issue on appeal—the proper application of a portion of the tax code to an undisputed set of operative facts—is a question of law, over which we exercise plenary review. *See, e.g., Kane v. United States,* 43 F.3d 1446, 1448 (Fed.Cir.1994); *Reese v. United States,* 24 F.3d 228, 230 (Fed.Cir. 1994).

*Analysis*

We do not write on a clean slate. Some eleven years ago, in *Arkla I,* the Fifth Circuit decided precisely the same question that is now before us, and in a manner adverse to Washington's position in the case at bar. A decision in Washington's favor would thus bring us into direct conflict with the Fifth Circuit's holding on the nondepreciability of recoverable cushion gas for purposes of the federal tax law. Washington, failing to acknowledge the heavy burden it must overcome in the face of the Fifth Circuit's adverse decision, casts its contentions on appeal as if the core question were one that no circuit court had yet decided. We, however, cannot turn aside the decision of a sister circuit so easily.

In *Arkla I,* the Fifth Circuit reviewed a district court's conclusion that, because the molecules of recoverable and nonrecoverable cushion gas are physically indistinguishable, these two economically distinct types of cushion gas must be treated the same—namely, as depreciable assets—for tax purposes. 765 F.2d at 489. The Fifth Circuit rejected this analysis, reasoning as follows:

That recoverable and nonrecoverable cushion gas are physically identical does not

---

**3.** The trial court refers here to the Court of Federal Claims' earlier decision in *Arkla, Inc. v. United States,* 27 Fed. Cl. 226 (1992) (*"Arkla II"*). In *Arkla II,* a case involving the same parties and the same question as the Fifth Circuit's *Arkla I,* the Court of Federal Claims ruled in favor of the government on collateral estoppel grounds. *Id.* at 232–33. We affirmed. *Arkla, Inc. v. United States,* 37 F.3d 621, 623–27 (Fed. Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1399, 131 L.Ed.2d 287 (1995).

**4.** This portion of the tax code, added by the Economic Recovery Tax Act of 1981, Pub.L. No. 97–34, 95 Stat. 170, bears on the relation between an asset's salvage value and the size of the allowable depreciation deduction. It provides, in relevant part, that "[n]o salvage value shall be taken into account in determining the amount of the deduction allowable" under section 167.

require them to be treated identically for depreciation purposes. The IRS allowed the investment tax credit for the nonrecoverable cushion gas Arkla claimed on its original 1980 federal income tax return because this gas will be unavailable for any use after the useful life of the storage facility ends. In essence, the useful life of the nonrecoverable gas is measured by the useful life of the storage facility. By contrast, the recoverable cushion gas will remain physically unchanged in the storage facility for an indefinite period of time. At any time that the storage facility is closed, the recoverable gas, by definition, will be available for sale or other use, with its general utility and value undiminished in any fashion. That the nonrecoverable cushion gas will become obsolete along with the storage facility, while the recoverable cushion gas will not, mandates a different treatment of the two assets for depreciation purposes.

*Id.* at 490. The trial court's decision in the case at bar plainly adheres to the Fifth Circuit's construction of section 167(a)'s depreciability standard in the cushion gas context. To rule in Washington's favor on appeal would thus be to reject the Fifth Circuit's construction of section 167(a).

 As a general matter, we "do not create conflicts among the circuits without strong cause." *Mayer v. Spanel Int'l Ltd.,* 51 F.3d 670, 675 (7th Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 563, 133 L.Ed.2d 488 (1995). We adhere to this view because "federal law (unlike state law) is supposed to be unitary." *Menowitz v. Brown,* 991 F.2d 36, 40 (2d Cir.1993). It would, of course, be foolhardy to suggest that we should blindly

adhere to another circuit court's decision as a fail-safe method of preventing intercircuit conflict. Congress has created multiple and co-equal intermediate federal appellate courts, each with an equal power and duty to decide the cases properly brought before it. This regime, by design, embraces the possibility of a considered difference in views among the circuit courts on a given question; a policy of blind adherence to the decision of another circuit, apart from any utility it might have in promoting uniformity and predictability in outcome, would flout the manifest will of Congress. As then-Judge Ginsburg had occasion to observe in *In re Korean Air Lines Disaster,* "each [federal court] has an obligation to engage independently in reasoned analysis." 829 F.2d 1171, 1176 (D.C.Cir.1987), *aff'd,* 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989). At the same time, the interest that all prospective parties before the court have in uniformity and predictability of outcome must be given its due. We thus temper the independence of the analysis in which we engage by according great weight to the decisions of the other circuits on the same question. Moreover, as the courts of appeals have long recognized, the need for uniformity of decision applies with special force in tax matters.[5] In recognition of the principle that "uniformity among the circuits is particularly desirable in tax cases to ensure equal application of the tax system to our citizenry," we have held that we should not "reach a result in conflict with" a sister circuit "unless the statute [at issue] or precedent of this court gives us, in our view, no alternative." *Gibraltar Fin. Corp. v. United States,* 825 F.2d 1568, 1572 (Fed.Cir.1987) (footnote omitted).[6] Washington, in order to prevail,

---

5. *See, e.g., North Am. Life & Casualty Co. v. Commissioner,* 533 F.2d 1046, 1051 (8th Cir. 1976) ("[D]ecisions of other courts of appeals in the area of taxation should be followed unless they are demonstrably erroneous or there appear cogent reasons for rejecting them."); *Federal Life Ins. Co. v. United States,* 527 F.2d 1096, 1098–99 (7th Cir.1975) ("Respect for the decisions of other circuits is especially important in tax cases because of the importance of uniformity, and the decision of the Court of Appeals of another circuit should be followed unless it is shown to be incorrect."); *Grimland v. United States,* 206 F.2d 599, 601 (10th Cir.1953) ("Of course, we are not bound by the decisions of other courts of appeals

but they are persuasive and entitled to great weight, particularly in tax matters.").

6. It is worth noting that the Ninth Circuit, where the instant appeal would have been heard had Washington pursued its dispute with the IRS through the Tax Court rather than through the Court of Federal Claims, follows much the same approach. *See Pacific First Fed. Sav. Bank v. Commissioner,* 961 F.2d 800, 803 (9th Cir.) ("As we pointed out in *Vukasovich,* in the realm of national tax law, 'it is more important that the applicable rule of law be settled than it be settled right.'") (quoting *Vukasovich, Inc. v. Commissioner,* 790 F.2d 1409, 1413 (9th Cir.1986)), *cert.*

must therefore demonstrate that either section 167, the implementing Treasury Regulation, or some precedent of this court leaves us with no alternative but to reverse the trial court's decision on the depreciability *vel non* of recoverable cushion gas.

Taking the latter point first, Washington contends that the decision of one of our predecessor courts in *Transwestern Pipeline Co. v. United States*, 225 Ct.Cl. 399, 639 F.2d 679 (1980), in contrast to *Arkla I*, takes the proper approach to determining the depreciability of an asset such as cushion gas. Indeed, Washington characterizes the analyses presented in *Transwestern* and *Arkla I* as "competing." We do not share this view.

In *Transwestern*, the Court of Claims confronted the question whether line pack gas, the pressure-maintaining baseline amount of gas used in an above-ground pipeline, was a depreciable asset or simply inventory, and therefore not depreciable. 639 F.2d at 681–82. Transwestern had claimed depreciation deductions for the line pack gas, which deductions the IRS disallowed. The court's trial division ruled in Transwestern's favor in its refund action against the government, and the appellate division affirmed. *Id.* at 680–81. Critical to the court's resolution of the case was the fact, undisputed by the parties, that "[u]pon the abandonment of the gas transmission system at the end of its useful life, the vast majority of the line pack would be lost and only a small fraction thereof would be economically recoverable at that time."[7] *Id.* at 681. According to the trial decision, which the appellate panel adopted as its own, *id.* at 680, "[o]bviously, line pack, as a minimum volume of gas which must always be maintained in Transwestern's pipeline system if it is to operate, *and which will not be recoverable to any substantial extent at the end of the system's useful life,* can scarcely be regarded as inventory or as property held primarily for sale to customers."

*Id.* at 685 (emphasis added). In other words, according to the panel, the unrecoverable line pack gas "is an indispensable and, in substance, an integral part of the pipeline system, just as the pipe in the pipeline, or the compressors or any other essential component without which the pipeline system cannot operate." *Id.* at 680–81. Interestingly, the court relied secondarily on an analogy to Revenue Ruling 75–233, 1975–1 C.B. 95, wherein the IRS concluded that unrecoverable cushion gas "is tangible property in the nature of a permanent improvement or betterment made to adapt the reservoir [in question] to the storage of gas" and thus depreciable under section 167. *Id.* at 686 (quoting Rev.Rul. 75–233, 1975–1 C.B. at 96). The court found support for its conclusion in the functional and economic similarity between unrecoverable line pack gas and unrecoverable cushion gas. *Id.*

To the extent one can derive a general rule from *Transwestern*, it is that an asset is depreciable if, despite being physically indistinguishable from and commingled with inventory, it is necessary to the working operation of a capital asset (such as a pipeline system) and is essentially unrecoverable at the end of the useful life of that same capital asset. Far from undermining the trial court's decision in the case at bar, or the persuasiveness of the Fifth Circuit's decision in *Arkla I*, the Court of Claims' decision in *Transwestern* strongly supports the outcome below, according to which the unrecoverable portion of the Jackson Prairie cushion gas is treated in the same manner the *Transwestern* court treated the unrecoverable line pack gas.

As for the statute itself, Washington's additional contentions are equally unavailing. For example, Washington contends that "an interpretation [of section 167(a) ] that would allow the bifurcation of cushion gas into 're-coverable' and 'nonrecoverable' cushion gas

---

*denied,* 506 U.S. 873, 113 S.Ct. 209, 121 L.Ed.2d 150 (1992); *First Charter Fin. Corp. v. United States,* 669 F.2d 1342, 1345 (9th Cir.1982) ("Uniformity among the circuits is especially important in tax cases to ensure equal and certain administration of the tax system. We would therefore hesitate to reject the view of another circuit.").

7. The trial court's complete discussion of the recoverability *vel non* of the line pack gas occupies over three pages in the official reporter. 639 F.2d at 684–87.

would render the 'salvage value' provision (section 168(f)(9)) superfluous." However, as we held in our own *Arkla* decision, "[s]ection 168(f)(9) only affects the *amount* of a depreciation deduction once an asset is found to be subject to depreciation ... [but] does not influence whether a depreciation deduction is allowed in the first place." *Arkla, Inc. v. United States,* 37 F.3d 621, 626 (Fed.Cir. 1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1399, 131 L.Ed.2d 287 (1995). Having carefully considered Washington's remaining arguments, we are not persuaded that we must reject the Fifth Circuit's cogent analysis of the question at hand.

For the foregoing reasons, the decision of the Court of Federal Claims in the government's favor is affirmed.

*AFFIRMED.*