**ARKLA, INC., Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 84–4642.**

United States Court of Appeals, Fifth Circuit.

July 15, 1985.

Rehearing and Rehearing En Banc Denied Aug. 20, 1985.

D.H. Perkins, Jr., Shreveport, La., Michael N. Wilcove, Tax Div., Dept. of Jus-

---

tice, Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Sec., Tax Div., Jonathan S. Cohen, George L. Hastings, Jr., Washington, D.C., for defendant-appellant.

Blanchard, Walker, O'Quin & Roberts, J. Edgerton Pierson, Jr., Lawrence L. Jones, Shreveport, La., for plaintiff-appellee.

Before GEE, TATE and HIGGIN-BOTHAM, Circuit Judges.

GEE, Circuit Judge:

Arkla, Inc. (Arkla) brought an action in the district court seeking a refund of federal income tax it paid for 1980. The district court granted summary judgment for Arkla. 592 F.Supp. 502. We reverse.

I.

Arkla is an integrated natural gas company providing natural gas to customers in Arkansas, Louisiana, Kansas, Oklahoma, and Texas. To provide for future gas storage needs, Arkla decided to convert a natural underground gas reservoir in eastern Oklahoma known as the "Chiles Dome" facility into a gas storage reservoir. To this end, Arkla acquired from the surface owners the right to store gas in the formation, as well as surface rights for drilling wells, laying pipelines, and constructing gathering and transmission facilities.

Arkla determined that in order to operate the reservoir at peak efficiency it would have to maintain a certain minimum gas pressure at the intake side of the compressors pumping gas out of the facility into the attached delivery lines. To achieve that pressure, Arkla maintains in the facili-ty a volume of natural gas known as "cushion gas." Cushion gas is physically indistinguishable from the natural gas delivered to customers; the term simply refers to the volume of gas required to maintain the desired pressure in the reservoir. Arkla provided the requisite amount of cushion gas in the Chiles Dome reservoir by purchasing native gas already present there and by injecting additional gas purchased elsewhere.[1]

Arkla created two separate accounting categories for the natural gas it acquired. These categories were designed to distinguish between the "recoverable" cushion gas (i.e. that gas that will be commercially removable and marketable when the reservoir is no longer used as a storage facility) and the "nonrecoverable" cushion gas.[2]

On its original 1980 federal income tax return Arkla claimed an investment tax credit under § 38 of the Internal Revenue Code ("the Code") for the cost of the non-recoverable cushion gas. The Internal Revenue Service (IRS) allowed a credit for $22,271.23. Arkla then filed an amended return for 1980 claiming an additional investment credit of $1,129,746.37 for the cost of the recoverable cushion gas. The IRS neither allowed nor disallowed this claim within six months after the amended return was filed, and Arkla brought an action in district court seeking a refund based on the claimed increased credit.

In the district court, the parties stipulated the factual questions, submitted the deposition testimony of two technical experts, and filed cross-motions for summary judgment. The sole issue was Arkla's eligibility for the investment tax credit with respect to the recoverable cushion gas. Resolution of this issue depended upon whether such gas constitutes depreciable

---

1. During 1980, the year Arkla put the Chiles Dome facility into service, Arkla purchased for $328,305.20 the 3,499,381 thousand cubic feet (MCF) of native gas already in the reservoir to be used as cushion gas. Arkla also purchased for $9,689,239.16 another 5,979,277 MCF of natural gas, which was injected into the reservoir as additional cushion gas.

2. Under the uniform system of accounts prescribed by the Federal Energy Regulatory Commission, Arkla placed the $193,662.91 cost of the 512,774 MCF of cushion gas it deemed "nonrecoverable" in one account, and the $9,823,881.45 cost of the recoverable cushion gas in another.

property. After considering the issue, the district court filed a memorandum opinion ruling that the recoverable and nonrecoverable cushion gas was functionally identical and that the recoverable cushion gas was depreciable property. The court therefore granted Arkla's motion for summary judgment. The IRS appeals.

## II.

(A) This case involves the application of several complex Code sections. Section 38 of the Code provides "there shall be allowed, as a credit against a tax imposed by this Chapter, the amount determined under Subpart B of this part." Subpart B includes Code §§ 46–48. The parties stipulated that cushion gas satisfies the requirements of Code § 48(a)(1)(B)(iii),[3] which classifies cushion gas as "Section 38 property," or property for which investment tax credit is allowed. In addition, the last sentence of § 48(a)(1) provides that "Section 38 property" includes only property with respect to which depreciation ... is allowable and having a useful life ... of 3 years or more...." Thus, to qualify for the investment tax credit cushion gas must be a capital asset, depreciable, and have a useful life of over three years (seven years to receive the full tax credit). The district court ruled that Arkla's cushion gas satisfied these three requirements and entered summary judgment for Arkla on this basis.

(B) The district court's conclusions that the cushion gas is a capital asset and that the gas has a useful life of over seven years are clearly correct, and the IRS does not challenge them. The controversy in this case centers on the district court's ruling that both the nonrecoverable and the recoverable cushion gas is property "with

respect to which depreciation ... is allowable" within the meaning of Code § 48(a)(1).

In the portion of the district court's Memorandum Opinion that discusses whether the recoverable cushion gas is depreciable, the court first quotes Code § 167(a),[4] which provides guidelines for determining whether depreciation is allowable on a particular asset. The court then rejects the IRS's argument that the recoverable cushion gas is not an asset subject to exhaustion or wear and tear, and therefore not depreciable, stating:

> The fact stipulations in the Pretrial Order indicate that the government allowed an investment tax credit for *nonrecoverable* cushion gas contained in the Chiles Dome facility. This allowance implies that the cushion gas, at least the non-recoverable component, is subject to depreciation. For the government to argue that natural gas, as a generic entity, is not subject to depreciation because it never wears out contradicts its allowance of an investment tax credit for the non-recoverable cushion gas.

Memorandum Opinion, Record on Appeal at 177. The IRS contends that the district court erred in ruling that, because the recoverable and the nonrecoverable cushion gas are physically indistinguishable, no distinction between them can properly be made in determining whether the recoverable gas, like the nonrecoverable gas, is a depreciable asset. Therefore, the IRS argues, the district court erred in allowing Arkla's claim for an investment tax credit based on the value of the recoverable cushion gas.

We agree with the IRS that the district court erred in ruling that the recoverable

---

**3.** Code § 48(a)(1)(B)(iii) provides that the term "Section 38 property" includes tangible property which "constitutes a facility used in connection with any of the activities referred to in clause (i) for bulk storage of fungible commodities (including commodities in a liquid or gaseous state)...." Activities referred to in clause (i) (Code § 48(a)(1)(B)(iii)) include "manufacturing, production, or extraction, or ... furnishing transportation, communications, electrical energy, gas, water, or sewage disposal services...."

**4.** Code § 167(a) provides: "There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear, (including a reasonable allowance for obsolescence)—(1) of property used in the trade or business, or (2) of property held for the production of income."

cushion gas is subject to depreciation and that Arkla is entitled to an investment tax credit. That recoverable and nonrecoverable cushion gas are physically identical does not require them to be treated identically for depreciation purposes. The IRS allowed the investment tax credit for the nonrecoverable cushion gas Arkla claimed on its original 1980 federal income tax return because this gas will be unavailable for any use after the useful life of the storage facility ends. In essence, the useful life of the nonrecoverable gas is measured by the useful life of the storage facility. By contrast, the recoverable cushion gas will remain physically unchanged in the storage facility for an indefinite period of time. At any time that the storage facility is closed, the recoverable gas, by definition, will be available for sale or other use, with its general utility and value undiminished in any fashion. That the nonrecoverable cushion gas will become obsolete along with the storage facility, while the recoverable cushion gas will not, mandates a different treatment of the two assets for depreciation purposes.

The IRS's position is supported by several other considerations as well. The depreciation deduction allowed by § 167 and the investment tax credit authorized by § 38 are designed to compensate a taxpayer for actual economic loss. While Arkla will clearly suffer economic loss with respect to the nonrecoverable cushion gas, the recoverable cushion gas, because it can be commercially removed from the storage facility at the end of the facility's useful life, does not represent a potential economic loss to Arkla. Furthermore, the Treasury Regulations interpreting § 167 provide that a taxpayer is entitled to a depreciation allowance only with respect to *"that part* of the property which is subject to wear and tear, to decay or decline from natural causes, to exhaustion, and to obsolescence." Treas. Reg. § 1.167(a)–2 (emphasis added). This regulation's recognition that sometimes only part of a capital asset may be depreciable supports the IRS's distinction between recoverable and nonrecoverable cushion gas. Finally, a reading of § 48 suggests

that for any cushion gas to qualify for an investment tax credit, the useful life of the gas must be measured by the useful life of the storage facility. Because only the nonrecoverable cushion gas can have a useful life measured in this way, Arkla is not entitled to an investment tax credit for the recoverable cushion gas.

The district court relied on *Transwestern Pipeline Co. v. United States,* 639 F.2d 679, 225 Ct.Cl., 399 (1980), to support its ruling in favor of Arkla, and Arkla relies on that case in this appeal. In *Transwestern,* the court held that "line-pack" gas, which performs the same function in pipelines as cushion gas does in reservoirs, was a capital asset depreciable over the useful life of the pipeline system. *Transwestern* is distinguishable from the instant case, however, because the "vast majority" of the line-pack gas involved there would be lost at the end of the pipeline's useful life. 639 F.2d at 681. In this case, most of the cushion gas will be recoverable at the end of the reservoir's useful life. Because of this factual distinction, *Transwestern* cannot serve as authority for allowing Arkla's investment tax credit for the recoverable cushion gas.

For the foregoing reasons, the judgment of the district court is REVERSED, and the case is REMANDED for entry of judgment in favor of the United States.