ARKLA, INC., Plaintiff–Appellant,

v.

The UNITED STATES, Defendant–Appellee.

No. 94–5023.

United States Court of Appeals, Federal Circuit.

Oct. 4, 1994.

Lawrence L. Jones, Atty., Blanchard, Walker, O'Quin & Roberts, Shreveport, LA, argued, for appellant. Of counsel were J. Edgerton Pierson, Jr. and Frederick R. Parker, Jr.

Thomas J. Clark, Atty., U.S. Dept. of Justice, Washington, DC, argued, for appellee. With him on the brief were Loretta C. Argrett, Acting Asst. Atty. Gen., Gary R. Allen and Jonathan S. Cohen.

Before MAYER, MICHEL and LOURIE, Circuit Judges.

MICHEL, Circuit Judge.

Arkla, Inc. appeals the Court of Federal Claims' grant of summary judgment for the government, denying Arkla's claim for income tax refunds in two related cases, *Arkla, Inc. v. United States*, 27 Fed.Cl. 226 (1992) (*Arkla II*), and Docket No. 90–3954T, decided September 13, 1993. Arkla claimed refunds for taxes and assessed interest paid for the years 1981 through 1984 based on the Internal Revenue Service's (IRS) denial of an investment tax credit (ITC) under I.R.C. (26 U.S.C.) § 38[1] and depreciation deductions under I.R.C. § 168 for recoverable cushion gas and line pack gas purchased for Arkla's natural gas facilities. Because Arkla is col-

laterally estopped from bringing these claims by a Fifth Circuit decision, *Arkla, Inc. v. United States*, 765 F.2d 487 (5th Cir.1985) (*Arkla I*), we affirm.

## BACKGROUND

### A. Cushion Gas

Arkla is an integrated natural gas company providing natural gas to customers in Arkansas, Louisiana, Kansas, Oklahoma, and Texas. In the late 1970's, Arkla purchased the right to store gas in the Chiles Dome reservoir, a natural underground gas reservoir in Oklahoma, as well as surface rights for drilling wells, laying pipelines, and constructing other facilities. Arkla determined that in order to efficiently deliver gas from the reservoir to its customers, the reservoir must always contain 14 BCF (billion cubic feet) of "cushion gas," a volume of natural gas required to maintain a desired minimum pressure for a gas storage facility.

The cushion gas was the largest single item of cost in the construction of the Chiles Dome reservoir, costing almost $18 million. In 1980 Arkla purchased, at a total cost of approximately $10 million, 3.5 BCF of native natural gas already in the reservoir and 5.98 BCF of natural gas which was injected into the reservoir to serve as cushion gas. A majority of this gas was classified for Federal Energy Regulatory Commission (FERC) accounting purposes as recoverable and the remainder was classified as nonrecoverable. Recoverable cushion gas can be economically withdrawn from the reservoir and sold upon abandonment of the facility, although both recoverable and nonrecoverable cushion gas serve the same function in operating a gas storage facility. In 1981, Arkla purchased additional natural gas costing over $8 million and injected it into the reservoir to serve as cushion gas. All of the gas purchased in 1981 was classified as recoverable.

On its 1980 federal income tax return, Arkla claimed an investment tax credit (ITC) under section 38 of the Internal Revenue Code, for the cost of the nonrecoverable

---

1. Unless otherwise noted, all statutory references are to the Internal Revenue Code, as in effect during the years at issue in this case, 1981 through 1984.

cushion gas. The IRS allowed the credit. Arkla then filed an amended return for 1980 claiming an additional ITC for the cost of the recoverable cushion gas. When the IRS neither allowed nor disallowed this claim within six months after the amended return was filed, Arkla sought a refund in the United States District Court for the Western District of Louisiana. The district court granted summary judgment for Arkla, which was reversed by the Fifth Circuit in *Arkla I,* 765 F.2d at 487.

The Fifth Circuit concluded that to qualify for an investment tax credit, cushion gas must be a capital asset, depreciable, and have useful life over three years under I.R.C. § 48(a)(1). *Id.* at 489. The court held that the recoverable cushion gas was not depreciable because it would remain physically unchanged in the reservoir for an indefinite period of time and could be sold when the reservoir was finally closed. *Id.* at 490.

On its income tax return for 1981, Arkla claimed an ITC of $944,690.32 under I.R.C. § 38 for the cushion gas purchased in 1981 and a depreciation deduction of $657,175.95 for that gas under the Accelerated Cost Recovery System (ACRS) provision of I.R.C. § 168. Arkla also claimed depreciation deductions in the amounts of $1,150,057.91, $985,763.93 and $821,469.94 on its tax returns filed for the years 1982, 1983 and 1984, respectively.

The IRS disallowed the investment tax credit claimed in 1981 and depreciation deductions claimed for 1981–84. Arkla prepaid the asserted deficiencies and sought a refund in the Court of Federal Claims which granted summary judgment for the government, holding that *Arkla I* collaterally estopped Arkla from arguing that it is entitled to an ITC and depreciation deductions for recoverable cushion gas. *Arkla II,* 27 Fed.Cl. at 233.

### B. Line Pack Gas

Arkla also seeks an income tax refund based on the IRS's denial of an ITC for 1981 and of depreciation deductions for the years 1981–84 for gas purchased to be used as line pack gas in Arkla's natural gas pipeline system. Line pack gas is the amount of gas which must remain in the pipelines at all times to maintain a certain pressure for efficient use.

The parties stipulated that in 1981 Arkla injected 18,532 MCF (thousand cubic feet) into the pipeline system, of which 70% is economically recoverable. The Court of Federal Claims granted summary judgment in part for the government and in part for Arkla, holding that Arkla could recover an ITC and depreciation deductions only for the portion of the line pack gas that is not recoverable. Arkla appealed both rulings favorable to the government, arguing it should receive an ITC and depreciation deductions for the entire volume of the cushion gas and the line pack gas. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3) (1988).

### STANDARD OF REVIEW

■ Because the Court of Federal Claims denied Arkla's request for tax refunds as a matter of law by granting the government's motions for summary judgment, our standard of review is *de novo. Turner v. United States,* 901 F.2d 1093, 1095 (Fed.Cir.1990) ("We review the grant of summary judgment motions by the Claims Court *de novo.*").

### ANALYSIS

#### A. Collateral Estoppel Bars Arkla's Claim Based on the Cushion Gas

■ The doctrine of collateral estoppel, also called issue preclusion, bars parties to a prior lawsuit from relitigating any issues that were actually and necessarily determined by a court of competent jurisdiction in the prior suit. *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). The doctrine serves "the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Id.* at 326, 99 S.Ct. at 649. Affording a litigant more than one full and fair opportunity for judicial resolution of the same issue results in an untenable misallocation of resources. *Blonder–Tongue Labs., Inc. v. University of Ill. Found.,* 402

U.S. 313, 328–29, 91 S.Ct. 1434, 1442–43, 28 L.Ed.2d 788 (1971).

■ Collateral estoppel is appropriate only if: (1) the issue to be decided is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) the parties had a full and fair opportunity to litigate the issue in the first action. *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.,* 723 F.2d 1566, 1569, 221 USPQ 394, 397 (Fed.Cir. 1983).

#### 1. *The Issue Presented by This Case*

Because Arkla argues that only the requirement of identical issues has not been met here, our first task is to define the issue in this case. To be eligible for an ITC under section 38, the property in question must be either "recovery property" or "property with respect to which depreciation ... is allowable." I.R.C. § 48(a).[2] To be eligible for a depreciation deduction through the ACRS provision of section 168, the property in question must be "recovery property," I.R.C. § 168(a), which section 168(c)(1) defines as "tangible property of a character subject to the allowance for depreciation."[3] Although neither section 48 nor section 168 provides a definition of "depreciation," section 167(a) describes property for which a depreciation deduction is allowed:

> There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—
>
> (1) of property used in the trade or business, or
>
> (2) of property held for the production of income.

I.R.C. § 167(a).

Thus, whether Arkla is entitled to an ITC and depreciation deductions for the recovera-

ble cushion gas injected into the reservoir in 1981 depends on whether recoverable cushion gas is "property with respect to which depreciation ... is allowable," I.R.C. § 48(a), and similarly, "property of a character subject to the allowance for depreciation," I.R.C. § 168(c). This question turns on whether recoverable cushion gas is property subject to "exhaustion, wear and tear (including ... obsolescence)." I.R.C. § 167(a).

#### 2. *The Issue Decided in Arkla I*

The issue presented by this case is identical to that decided in *Arkla I.* The Fifth Circuit described "the sole issue" in *Arkla I* as "Arkla's eligibility for the investment tax credit with respect to the recoverable cushion gas. Resolution of this issue depend[s] upon whether such gas constitutes depreciable property." *Arkla I,* 765 F.2d at 488–89.

In *Arkla I* the Fifth Circuit concluded that recoverable cushion gas must be treated as non-depreciable property even though it is physically identical to nonrecoverable cushion gas which is treated as depreciable property:

> [T]he recoverable cushion gas will remain physically unchanged in the storage facility for an indefinite period of time. At any time that the storage facility is closed, the recoverable gas, by definition, will be available for sale or other use, with its general utility and value undiminished in any fashion. That the nonrecoverable cushion gas will become obsolete along with the storage facility, while the recoverable cushion gas will not, mandates a different treatment of the two assets for depreciation purposes.

*Id.* at 490. Cushion gas does not decay or deteriorate. It becomes obsolete only if it

---

2. The relevant portion of section 48(a) defines "section 38 property" as including:

> only recovery property (within the meaning of section 168 without regard to any useful life) and any other property with respect to which depreciation (or amortization in lieu of depreciation) is allowable and having a useful life (determined as of the time such property is placed in service) of 3 years or more.

I.R.C. § 48(a).

3. Section 168(c)(1) defines "recovery property":

> (c) Except as provided in subsection (e) [referring to property placed in service before Jan. 1, 1981], the term "recovery property" means tangible property of a character subject to the allowance for depreciation (A) used in a trade or business, or (B) held for the production of income.

I.R.C. § 168(c)(1).

cannot be recovered from an abandoned storage facility. Thus, the Fifth Circuit held that recoverable cushion gas is a separate asset from nonrecoverable cushion gas. The Fifth Circuit further held that recoverable cushion gas is not eligible for an ITC because it is not depreciable and, therefore, not "section 38 property" under section 48(a)(1). *Id.*

█ In both *Arkla I* and this case, Arkla's entitlement to a refund turns on whether recoverable cushion gas is subject to depreciation as defined by section 167(a). Thus, the "question expressly and definitely presented in this suit is the same as that definitely and actually litigated and adjudged" adversely to Arkla in the Fifth Circuit. *United States v. Moser*, 266 U.S. 236, 242, 45 S.Ct. 66, 67, 69 L.Ed. 262 (1924). Absent significant changes in controlling facts or legal principles since *Arkla I*, or other special circumstances, the Fifth Circuit's resolution of these issues is conclusive here. *Commissioner v. Sunnen*, 333 U.S. 591, 599, 68 S.Ct. 715, 720, 92 L.Ed. 898 (1948) ("[A] subsequent modification of the significant facts or a change or development in the controlling legal principles may make that determination obsolete or erroneous, at least for future purposes.").

### a. No Material Facts Have Changed

Arkla argues that the issue in this case is not identical to the issue decided in *Arkla I* because *Arkla I* involved the availability of an ITC for cushion gas purchased in 1980, whereas this case involves the availability of a depreciation deduction and an ITC for cushion gas purchased in 1981.[4]

█ Factual differences must be material, i.e., having legal significance, to prevent operation of collateral estoppel. *Montana v. United States*, 440 U.S. 147, 162, 99 S.Ct. 970, 978, 59 L.Ed.2d 210 (1979). In *Montana*, a contractor on a federal dam project brought a lawsuit in state court which was directed and financed by the federal government to challenge the constitutionality of a

Montana tax imposed on public, but not private, contractors. The state court upheld the constitutionality of the tax. *Id.* at 151, 99 S.Ct. at 972. The federal government then brought a separate suit challenging the same tax in the United States district court. However, the government's suit placed in issue contracts different from those at issue in the first case. The Supreme Court held that the government's suit was barred by collateral estoppel because the different contract provisions did not raise "material" differences in facts that were essential to the state court's judgment. *Id.* at 159–60, 99 S.Ct. at 976–77.

The additional depreciation deduction and the different purchase years present in this case are not material differences of controlling significance. The fact that Arkla claims a depreciation deduction here, whereas it only claimed an ITC in *Arkla I*, is not material because Arkla's entitlement to the depreciation deduction turns on the same issue as its entitlement to the ITC—whether recoverable cushion gas is subject to depreciation as defined in section 167(a). Likewise, the fact that the cushion gas of *Arkla I* was purchased in 1980 and the cushion gas here was purchased in 1981 is not material because it has no bearing on the dispositive issue of whether the recoverable cushion gas is depreciable. The facts essential to the judgment in *Arkla I* were that recoverable cushion gas is not subject to exhaustion, wear and tear or obsolescence, and that at the time the Chiles Dome facility would be closed, the recoverable cushion gas would be available for sale. Thus, because neither factual difference in this case alters any of these facts essential to the judgment in *Arkla I*, the differences do not prevent operation of collateral estoppel in this case.

### b. The Relevant Law Has Not Changed

Arkla also argues that a change in the controlling legal principles after 1980 renders

---

4. Arkla relies on *Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948), for the proposition that collateral estoppel applies in tax cases only when all relevant facts are unchanged. However, in *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979), the Court distinguished *Sunnen*, explaining that collateral estoppel did not apply in that case because "there had been a significant change in the legal climate." *Id.* at 161, 68 S.Ct. at 977, quoting *Sunnen*, 333 U.S. at 606, 68 S.Ct. at 723. Thus, the factual changes in *Sunnen* were not the basis of the holding in that case.

*Arkla I* inconsistent with the statutes governing this case, precluding application of collateral estoppel. Enactment of the Economic Recovery Tax Act of 1981, Pub.L. No. 97–34, 95 Stat. 172, added section 168(f)(9) to the Internal Revenue Code. That section states, "[n]o salvage value shall be taken into account in determining the deduction allowable under subsection (a)." I.R.C. § 168(f)(9). Section 168(f)(9) provides that salvage value is irrelevant when determining the amount of depreciation deduction available with respect to assets placed in service after 1980.

Section 168(f)(9) does not affect the law relevant to the determination made in *Arkla I,* that recoverable cushion gas, an asset separate from nonrecoverable gas, is not depreciable under section 167 because it is not subject to exhaustion, wear and tear or obsolescence. Section 168(f)(9) only affects the *amount* of a depreciation deduction once an asset is found to be subject to depreciation. Salvage value does not influence whether a depreciation deduction is allowed in the first place, which is the issue both here and in *Arkla I.* Thus, the controlling law is identical in *Arkla I* and this case.

Arkla argues that section 168(f)(9) in combination with the holding in *Transwestern Pipeline Co. v. United States,* 639 F.2d 679, 225 Ct.Cl. 399 (1980), changes the controlling legal principles from those applied in *Arkla I.* Arkla contends *Transwestern* holds that line pack gas, which is functionally equivalent to cushion gas, must be treated as a single asset, with the recoverable line pack gas representing merely the salvage value of the single asset. According to Arkla, because *Transwestern* holds that line pack gas must be treated as a single asset, cushion gas must also be treated as a single asset, with the value of recoverable cushion gas being the salvage value of the entire asset. Arkla further contends that because salvage value cannot be taken into account under section 168(f)(9) when determining the amount of a depreciation deduction, the value of the recoverable cushion gas cannot be taken into account when determining the depreciation deduction for the entire amount of cushion gas.

Without commenting on whether Arkla's characterization of *Transwestern* is correct, we note that it is central to Arkla's argument that we treat cushion gas as a single asset rather than treating recoverable cushion gas as a separate asset from nonrecoverable cushion gas. Arkla is collaterally estopped by *Arkla I* from arguing that cushion gas is one asset because *Arkla I* expressly held that recoverable cushion gas is a separate asset from nonrecoverable cushion gas. 765 F.2d at 490 ("That the nonrecoverable cushion gas will become obsolete along with the storage facility, while the recoverable cushion gas will not, mandates a different treatment of the two assets for depreciation purposes.").

Arkla argues that we may not follow the rationale of *Arkla I,* but instead must follow the rationale of *Transwestern* in deciding whether to treat recoverable gas as a separate asset or as the salvage value of the entire volume of cushion gas because *Transwestern* is a binding precedent on this court. *South Corp. v. United States,* 690 F.2d 1368, 1370 (Fed.Cir.1982).

Whether we or our predecessor court would have decided *Arkla I* differently had it been brought here is irrelevant to the issue of collateral estoppel before us now. The court that considers the question of collateral estoppel does not examine the reasoning of the court that decided the issue. *University of Ill. Found. v. Blonder–Tongue Labs., Inc.,* 465 F.2d 380, 381 (7th Cir.), *cert. denied,* 409 U.S. 1061, 93 S.Ct. 559, 34 L.Ed.2d 513 (1972). "Collateral estoppel does not turn upon a determination that a prior ruling was *correctly* rendered...." *Laaman v. United States,* 973 F.2d 107, 112 (2nd Cir.1992) (emphasis in original), *cert. denied,* —— U.S. ——, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993). Because the treatment of recoverable cushion gas as a separate asset was essential to the Fifth Circuit's ruling in *Arkla I,* Arkla is estopped from obtaining any different treatment of recoverable cushion gas now. Arkla does not contest that it had a full and fair opportunity to litigate that issue in the Fifth Circuit, so we will not consider the issue here. Moreover, as explained above, once recoverable cushion gas is viewed as a separate asset, section 168(f)(9) is irrelevant in

determining whether it is depreciable. Thus, no change in the controlling legal principles precludes the application of collateral estoppel in this case and the Fifth Circuit's resolution of these issues is conclusive here.

### B. Collateral Estoppel Bars Arkla's Claim Based on Line Pack Gas

■ We hold that Arkla is also collaterally estopped by *Arkla I* from arguing that the recoverable line pack gas which it purchased in 1981 is entitled to an ITC and a depreciation deduction. The question in *Arkla I*, whether recoverable cushion gas is depreciable, is identical to the question here, whether recoverable line pack gas is depreciable, when nonmaterial facts are taken into account. Because the differences between cushion gas and line pack gas do not amount to differences having controlling significance, the issue concerning the depreciability of recoverable gas is the same in both cases.

In arguing that *Transwestern* controls the outcome of its claims based on cushion gas, Arkla asserts that line pack gas is functionally equivalent to cushion gas. Although we disagree with Arkla's analysis of the import of *Transwestern*, we do acknowledge that line pack gas is functionally equivalent to cushion gas. Line pack gas, like cushion gas, is an amount of gas that must be maintained in the gas facilities to maintain a certain pressure for efficient use. Recoverable line pack gas, like recoverable cushion gas, is not subject to exhaustion, wear and tear or obsolescence. Both recoverable line pack and cushion gas can be removed from the facility and sold when the facility is abandoned. The analysis which led the Fifth Circuit to hold that recoverable cushion gas is not depreciable in *Arkla I* applies identically to recoverable line pack gas.

Therefore, we hold that the rule of *Arkla I* must be applied to line pack gas also because the difference between line pack gas and cushion gas does not amount to a material fact that would preclude application of collateral estoppel. We require that the tax liability for recoverable line pack gas and cushion gas be identical because we see no principled reason to treat them differently. For these reasons, Arkla is collaterally estopped from arguing that recoverable line pack gas is entitled to an ITC and depreciation deductions.

### CONCLUSION

In both *Arkla I* and this case, Arkla's entitlement to a refund turns on whether recoverable gas is subject to depreciation as defined by section 167(a). Because both cases involve the identical issue, and the controlling facts and law have not changed, Arkla is collaterally estopped from bringing the present suit. Arkla had the choice of bringing its initial suit for a refund in either the former Claims Court,[5] from which an appeal to this court lies, or the District Court for the Western District of Louisiana, from which *Arkla I* was appealed to the Fifth Circuit. *See* 28 U.S.C. § 1346(a)(1) (1988 & Supp. V 1993). Arkla chose to litigate this issue in the district court and is now bound by the outcome of that litigation. Having received an unfavorable outcome, Arkla cannot simply "try again" in the Court of Federal Claims. By precluding Arkla from contesting matters that it has had a full and fair opportunity to litigate, we protect its adversary, the IRS, from the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions. *See Montana*, 440 U.S. at 153–54, 99 S.Ct. at 973–74. Were we to allow Arkla to relitigate this issue and decide it differently from the Fifth Circuit, as Arkla

---

5. As of October 29, 1992, the United States Claims Court became the United States Court of Federal Claims, pursuant to Title IX of the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506.

asks, we would create an untenable situation. A single taxpayer would be bound by two conflicting rules and the IRS would have no way of knowing which rule to apply prospectively. Clearly, such a situation cannot be tolerated. For these reasons, both decisions of the Court of Federal Claims are

*AFFIRMED.*

### COSTS

Arkla shall bear all costs.