**CHEYENNE–ARAPAHO TRIBES OF OKLAHOMA, Plaintiffs,**

**v.**

**The UNITED STATES, Defendant.**

No. 247–87L.

United States Court of Federal Claims.

May 22, 1995.

Yvonne T. Knight, Boulder, CO, for plaintiffs, Richard Dauphinais, Native American Rights Fund, Washington, DC, of counsel.

Gerald S. Fish, Washington, DC, for defendant.

### *OPINION*

ANDEWELT, Judge.

#### I.

In this action, plaintiffs, Cheyenne–Arapaho Tribes of Oklahoma (the Tribes), seek monetary damages from the United States Department of the Interior (DOI) for DOI's alleged breach of its trust responsibilities with respect to plaintiffs' tribal lands. Plaintiffs contend that the Secretary of the Interior (the Secretary) breached his fiduciary obligations to the Tribes when he approved, over the Tribes' objections, certain communitization agreements. These agreements, *inter alia,* extended the terms of certain mineral leases DOI had issued on the Tribes' lands pursuant to 25 U.S.C. § 396a–g. In response to the Secretary's approval of these agreements, plaintiffs filed suit in the United States District Court for the Western District of Oklahoma seeking injunctive relief. While that action was pending, plaintiffs filed the instant suit seeking related damages.[1]

---

1. *United States v. Mitchell,* 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983), contains the

The district court ultimately granted in part plaintiffs' request for injunctive relief and thereby voided the lease extensions provided in certain of the communitization agreements. *Cheyenne–Arapaho Tribes of Oklahoma v. United States,* Civ. No. 84–1765–A (W.D.Okla. May 26, 1989) (*Cheyenne I* ). The district court granted this relief based on its conclusion that DOI breached its trust responsibilities to the Tribes when it approved the communitization agreements without first performing an adequate study of contemporary conditions for mineral leases on the reservation lands. The court explained that at the time the Secretary approved the agreements, oil and gas lease prices in the area of the tribal lands were significantly higher than when the parties had entered the original mineral leases. Hence, DOI's consideration of contemporary conditions on the Tribes' lands may have led DOI to conclude that extension of the leases under the royalty terms provided in the communitization agreements was not in the Tribes' economic interest.[2] The Court of Appeals for the Tenth Circuit affirmed the district court's breach of trust determination. *Cheyenne–Arapaho Tribes of Oklahoma v. United States,* 966 F.2d 583, 590 (10th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1642, 123 L.Ed.2d 265 (1993) (*Cheyenne II* ) ("After reviewing the record, this Court agrees with the district court that the trust responsibilities to the Tribe were uncontrovertedly breached by failure to examine all relevant factors before approving the agreement.").

This action is presently before the court on plaintiffs' motion for partial summary judgment. Plaintiffs contend that under the doctrine of collateral estoppel, also known as issue preclusion, defendant should be bound in this action by the Tenth Circuit courts' prior determination that DOI breached its trust responsibilities to the Tribes when DOI approved the communitization agreements. For the reasons set forth below, plaintiffs' motion for partial summary judgment is granted.

## II.

■ "Under the doctrine of issue preclusion, traditionally called 'collateral estoppel,' issues which are actually and necessarily determined by a court of competent jurisdiction are normally conclusive in a subsequent suit involving the parties to the prior litigation." *International Order of Job's Daughters v. Lindeburg & Co.,* 727 F.2d 1087, 1090 (Fed. Cir.1984). The doctrine derives from the general principle that "the same person may obtain a judicial determination of an issue only once." 1B James W. Moore et al., *Moore's Federal Practice* ¶ 0.443[1] (2d ed. 1995) (hereinafter *Moore's Federal Practice* ). The Supreme Court described the derivation and purpose of collateral estoppel as follows:

Under the judicially developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation. Collateral estoppel ... serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication."

---

analytical and precedential basis for the Tribes' suit in this court seeking monetary damages for a breach of trust with respect to DOI's actions regarding the Tribes' lands.

2. The district court explained its reasoning as follows:

Here, in the Anadarko Basin in *1981,* the economic climate was extremely favorable for those leasing mineral interests and leases were being negotiated on terms considerably more favorable to lessors than they had been in previous years. A fiduciary seeking to protect the interests of such Indian lessors should have taken measures to reap the benefits of this economically favorable climate, or, at least, explored what measures were possible. However, in approving the subject communitization agreements, the Acting Area Director based his analysis on general considerations and made an inadequate study of contemporary conditions in the particular sections involved....

Accordingly, the Court finds that, in approving the subject communitization agreements, the Area Director breached his trust responsibility to the Tribe....

*Cheyenne I,* slip op. at 43.

*United States v. Mendoza,* 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984) (citations omitted) (quoting *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980)); *see also Arkla, Inc. v. United States,* 37 F.3d 621, 623 (Fed.Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1399, 131 L.Ed.2d 287 (1995) ("Affording a litigant more than one full and fair opportunity for judicial resolution of the same issue results in an untenable misallocation of resources.").

In *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.,* 723 F.2d 1566, 1569 (Fed.Cir. 1983), the Court of Appeals for the Federal Circuit articulated the following four requirements for issue preclusion:

> (1) the issues to be concluded are identical to those involved in the prior action; (2) in that action the issues were raised and "actually litigated"; (3) the determination of those issues in the prior action was necessary and essential to the resulting judgment; and (4) the party precluded ... was fully represented in the prior action [and had a full and fair chance to litigate].

## III.

### A.

■ Turning initially to the first requirement of *Mother's Restaurant,* defendant does not dispute that both the instant case and the Tenth Circuit litigation involve the question of whether DOI's approval of the communitization agreements constitutes a breach of DOI's trust responsibilities to plaintiffs. Indeed, the factual allegations in the instant complaint and the Tenth Circuit complaint, in pertinent part, are essentially the same.[3] Defendant argues, however, that even though plaintiffs raised this same breach of trust issue in both cases, this court should not view the two cases as raising the identical issue for the purpose of issue preclusion. Defendant contends that issue preclusion should not apply here because the legal standards governing resolution of the breach of trust issue in this court are substantially different from the governing standards in the Tenth Circuit. Even assuming, however, that a difference in governing legal standards would be an appropriate ground for denying the application of issue preclusion, such a denial of issue preclusion is not appropriate here because the legal standards applied by the Tenth Circuit courts and this court regarding breach of trust are the same.

The Tenth Circuit courts viewed the determinative issue therein as whether DOI's approval of the communitization agreements under 25 U.S.C. § 396d constituted an abuse of the discretion allowed DOI under that statute. The Tenth Circuit courts initially concluded that DOI's decision to approve the communitization agreements should be evaluated as an exercise of DOI's trust responsi-

---

3. In the instant complaint, plaintiffs allege:

37.... Under the Mineral Leasing Act of 1938, 25 U.S.C. § 396a–g and implementing regulations and internal guidelines, the Secretary has the fiduciary duty to obtain an adequate appraisal of the fair market value of the mineral estate involved in any contemplated leasehold conveyance before approving any lease or extension of any lease of the estate.

38. The Secretary violated the Act and implementing regulations and guidelines by failing to obtain an adequate appraisal of the fair market value of the mineral estate covered by the Woods leases before approving the extension of those leases on May 8, 1981, through approval of communitization agreements. Such omission constitutes a breach of trust and resulted in a conveyance of the Tribe's mineral estate to Woods Petroleum Corporation at a value far less than its actual fair market value.

In their Tenth Circuit complaint, plaintiffs alleged:

50. The Mineral Leasing Act of 1938 imposes upon the Secretary of the Interior and his delegatees the trust duty to maximize lease revenues for the Tribes, and otherwise to administer that Act in the best interest of Indian Tribes. The Secretary and his delegatees, as trustees carrying out their duties under the Act, are judged by the most exacting fiduciary standards.

\* \* \* \* \* \*

52. The Secretary and his delegatees failed to act consistent with their fiduciary obligations. By approving the extension of the Woods leases beyond their primary terms without adequate analysis, of the Tribes' option to negotiate new and more favorable leases, and especially without an appraisal of the fair market value of the minerals sought to be conveyed, the Secretary and his delegatees breached their trust duties under the [Act] and the implementing regulations.

bilities to plaintiffs. *Cheyenne I,* slip op. at 30 ("general principles regarding review of agency decisions must be applied in light of the Secretary of Interior's fiduciary responsibilities to the Indians"); *Cheyenne II,* 966 F.2d at 589 ("the Secretary's discretion to approve or disapprove leases and communitization agreements must be governed by fiduciary standards and limited by fiduciary duties"). The courts then turned to the issue of whether DOI's approval of the agreements constituted a breach of trust. The court of appeals, essentially agreeing with the district court, employed the following analytical approach:

> "Acting in the capacity as a trustee, the Secretary ... must manage Indian lands so as to make them profitable for the Indians. As a fiduciary for the Indians, the Secretary is responsible for overseeing the economic interests of Indian lessors, and has a duty to maximize lease revenues."

*Cheyenne II,* 966 F.2d at 589 (quoting *Kenai Oil & Gas, Inc. v. Department of Interior,* 671 F.2d 383, 386 (10th Cir.1982)).

 This court would employ essentially the same approach if it were to evaluate the breach of trust allegations in the instant complaint on a *de novo* basis. Because DOI was acting in a trust capacity when it exercised its discretion under 25 U.S.C. § 396d and approved the communitization agreements, an evaluation of DOI's approval under a breach of trust analysis is appropriate. A trustee's duties are described in the Restatement (Second) of Trusts §§ 169–185 (1959). "The trustee is under a duty to the beneficiary in administering the trust to exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property...." *Id.* at § 174. This duty includes the obligation "to use reasonable care and skill to make the trust property productive." *Id.* at § 181. Applying these standards, when DOI leased mineral rights on plaintiffs' lands, it was obliged to use reasonable skill and care in an effort to maximize the benefits, financial and otherwise, that the Tribes would receive from those mineral leases. In order to meet this reasonable care standard, before approving any extensions of the original leases at a specified royalty rate, DOI should have evaluated the contemporaneous market conditions for mineral leases in the area to determine whether, in view of all of the pertinent facts, the communitization agreements established appropriate royalty rates.

Because plaintiffs presented the identical breach of trust issue in both the Tenth Circuit litigation and this action, plaintiffs have satisfied the first requirement for issue preclusion.

### B.

The second requirement of *Mother's Restaurant* is that the issue on which preclusion is sought was raised and actually litigated to resolution in the prior litigation. 723 F.2d at 1570; *see also* Restatement (Second) of Judgments § 27 cmt. d (1980). Defendant does not contest that the issue of breach of trust was raised and actually litigated in the Tenth Circuit litigation. Indeed, the record indicates that plaintiffs initially raised the breach of trust issue in their district court complaint and that both parties presented arguments on the issue in their briefs. Moreover, both the district court and the court of appeals specifically addressed the breach of trust issue in their written opinions and ruled against defendant. Thus, the second requirement for issue preclusion has been satisfied.

### C.

 Next, defendant contends that the third requirement of *Mother's Restaurant* has not been satisfied because the Tenth Circuit courts' determination that DOI's conduct constituted a breach of trust was not "necessary and essential" to the courts' judgment. Defendant contends that the breach of trust determination was not "necessary and essential" to the judgment because the Tenth Circuit courts could have concluded that DOI's approval of the communitization agreements constituted an abuse of DOI's discretion under 25 U.S.C. § 396d without reaching the issue of whether DOI's approval amounted to a breach of trust.

When applying the third requirement of *Mother's Restaurant*, however, the proper focus is not on whether the first court considering the issue in question could have reached the same judgment using a different rationale than it actually employed. Rather, in determining whether an issue is "necessary and essential" to a judgment, the correct focus is on the opinion of the court and the reasoning employed therein. Herein, as described above, the Tenth Circuit courts viewed the breach of trust analysis as determinative on the question of whether DOI's approval of the communitization agreements constituted an abuse of discretion. Indeed, the court of appeals specifically rejected the contention that it should use a different standard than breach of trust when evaluating whether DOI abused its discretion. The court explained: "When the Secretary is obligated, as in this case, to act as a fiduciary, 'then his actions must not merely meet the minimal requirements of administrative law, but must also pass scrutiny under more stringent standards demanded of a fiduciary.'" *Cheyenne II*, 966 F.2d at 590–91 (quoting *Jicarilla Apache Tribe v. Supron Energy*, 728 F.2d 1555, 1563 (10th Cir.1984)). Hence, the Tenth Circuit courts' determination that DOI breached its trust obligations was an essential predicate to the courts' ultimate conclusion that DOI abused its discretion under 25 U.S.C. § 396d, *i.e.*, the judgment *depended upon* the determination that DOI breached its trust obligations. Such a dependent relationship between the issue on which preclusion is sought and the prior courts' judgment satisfies the "necessary and essential" requirement for issue preclusion. *See* Restatement (Second) of Judgments § 27;[4] *Moore's Federal Practice* ¶ 0.443[5.–1] at III–584 ("It is clear ... that the mere existence of another possible ground for a judgment ... does not deprive the judgment of conclusive effect upon that issue if [that issue] was in fact determined.").

### D.

The final requirement of *Mother's Restaurant* is that the party against which preclusion is sought was fully represented in the prior litigation and had a full and fair opportunity to litigate. The complaint in the Tenth Circuit litigation specifically named the United States as a defendant, and the United States was represented in the Tenth Circuit litigation by counsel from the United States Attorneys Office. Defendant has not suggested that the Tenth Circuit courts did not provide defendant's counsel with a full and fair opportunity to litigate the breach of trust issue.

Defendant cites *Dugan v. Rank*, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963),[5] to support its contention that the parties to the Tenth Circuit litigation and the instant action are not identical because the Tenth Circuit litigation sought injunctive relief and the instant case seeks monetary relief. However, the fact that two actions seek different relief says nothing about the identity of the parties to those actions or the ability of the parties to litigate an issue. Indeed, the Tenth Circuit litigation challenged precisely the same actions by the same individuals as the instant case. Plaintiffs were obliged to split their challenge between the two courts because the district court lacks authority to award monetary damages in excess of $10,000 (28

---

4. The notes to Section 27 provide, in pertinent part:

> h. *Determinations not essential to the judgment.* If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. Such determinations have the characteristics of dicta, and may not ordinarily be the subject of an appeal by the party against whom they were made. In these circumstances, the interest in providing an opportunity for a considered determination, which if adverse may be the subject of an appeal, outweighs the interest in avoiding the burden of relitigation.

Here, as described above, the Tenth Circuit courts' judgment depended upon the determination that defendant had breached its fiduciary obligations to plaintiffs. Thus, the breach of trust determination was not dicta, but rather was necessary to the judgment.

5. Defendant also relies upon *1902 Atlantic Limited v. United States*, Case No. 637–87L (Cl.Ct. Mar. 13, 1990). That decision, however, was never published and therefore cannot properly be cited as authority. RCFC 52.1(a). In any event, *Atlantic Limited* involved application of res judicata, not issue preclusion, and the United States was not named as a defendant in the prior litigation at issue therein.

U.S.C. § 1346), and this court lacks authority to award the injunctive relief plaintiffs sought in the Tenth Circuit (28 U.S.C. § 1491). In *Dugan*, the Court concluded that the United States was not a proper party to a suit brought against certain government officials because the United States had never waived sovereign immunity so as to allow a suit directly against the United States. *Dugan*, 372 U.S. at 618, 83 S.Ct. at 1005. *Dugan*, however, preceded the adoption of the Administrative Procedures Act (APA). In Sections 702 and 703 of the APA, 5 U.S.C. §§ 702, 703, Congress specifically authorizes the naming of the United States as a defendant in actions challenging federal agency decisions such as those involved in the Tenth Circuit litigation. Hence, in the Tenth Circuit litigation, unlike *Dugan*, the United States was a proper defendant.

Based upon a review of all of the pertinent facts, the instant case appears to involve a garden variety application of issue preclusion. Applying issue preclusion here will promote justice because it will "relieve parties of the cost and vexation of multiple law suits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. at 94, 101 S.Ct. at 415.

### Conclusion

For the reasons set forth above, plaintiffs' motion for partial summary judgment is granted. This court previously suspended consideration of defendant's cross-motion for summary judgment. That motion also focused on DOI's liability for breach of trust. In view of this court's application of issue preclusion herein, defendant's cross-motion for summary judgment is denied. On or before June 21, 1995, the parties shall file a status report, jointly or separately, advising the court as to their intentions with respect to further proceedings in this action.

IT IS SO ORDERED.