78 F.3d 605
 77 A.F.T.R.2d 96-1030, 96-1 USTC P 50,172
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Arthur R. ALLEN and Maria P. Allen, Plaintiffs-Appellants,
v.
The UNITED STATES, Defendant-Appellee.
 No. 95-5090.
 United States Court of Appeals, Federal Circuit.
 Feb. 27, 1996.
 
 Before NEWMAN, MICHEL, and CLEVENGER, Circuit Judges.
 CLEVENGER, Circuit Judge.
 
 
 1
 Arthur and Maria Allen (Allen) appeal from a decision of the United States Court of Federal Claims (CFC) granting the Government's motion for summary judgment with respect to a disputed tax deduction taken by Allen on his amended 1986 tax return. We affirm.
 
 
 2
 * Allen invested in two gold-mining tax shelters in 1980. Under each shelter, Allen paid out $10,000 in cash and signed a $30,000 promissory note. He therefore claimed $80,000 in "mining development cost" deductions on his 1980 return. The Internal Revenue Service (IRS) disallowed these deductions. After some negotiation, Allen and the IRS reached a settlement and entered into a formal closing agreement with respect to the first shelter. Under the terms of that settlement, Allen took an ordinary deduction in 1980 equal to his cash investment of $10,000, and was permitted to deduct payments he made on the promissory note in the year the payment was actually made.
 
 
 3
 The dispute over the second shelter continued. In September 1984, Allen filed a petition in the Tax Court challenging the IRS's disallowance of his $40,000 deduction for the second shelter. Despite that petition, negotiations continued between Allen and the IRS and finally culminated in an apparent oral agreement. As the trial date neared, however, it became clear that a misunderstanding had occurred and that the parties were not in agreement as to the settlement's terms. In particular, when the IRS trial counsel assigned to the case tried to ascertain the terms of the settlement, the IRS Appeals Division, which had negotiated the settlement, expressed its understanding that payments on the note were to be deducted in the year paid, while Allen insisted that payments were to be deducted in 1980.*
 
 
 4
 For several months the matter remained unresolved. Then, on the eve of trial, Allen approached the IRS trial counsel and agreed to accept settlement on the Government's terms. According to Allen, this satisfied the IRS trial counsel, and the parties represented to the Tax Court that a basis for settlement had been reached. The Tax Court accordingly entered judgment against Allen in November 1987 for the tax due on the disallowed $30,000 deduction resulting from the note which he had taken in 1980.
 
 
 5
 Allen redeemed the note in July 1986, but failed to claim the deduction on his 1986 tax return because he was, at that time, still under the misconception that the IRS would permit him to deduct payments on the note in 1980. Following the Tax Court judgment, he filed an amended 1986 return and claimed the $30,000 deduction. The IRS disallowed the deduction, claiming that no enforceable settlement agreement existed between Allen and the IRS. Allen disagreed, and consequently sued in the CFC to enforce the settlement agreement and recover the alleged excess tax.
 
 
 6
 The CFC granted the Government summary judgment on two grounds. First, the court found that there had been no meeting of the minds between Allen and anyone with authority to bind the Government. Second, it held that even if such an agreement could be shown, the agreement would not be binding because it did not meet the formal requirements of 26 U.S.C. § 7121 (1994) and 26 C.F.R. § 301.7121(a), (d) (1995), which require that all administrative settlements be in writing and executed on forms prescribed by the IRS. In so holding, the CFC implicitly held that with respect to cases docketed in the Tax Court, the Government cannot be bound by any aspect of a settlement which affects tax years not before the Tax Court in the absence of a formal section 7121 closing agreement.
 
 II
 
 7
 We review de novo the CFC's grant of summary judgment. Arkla, Inc. v. United States, 37 F.3d 621, 623 (Fed.Cir.1994), cert. denied, 115 S.Ct. 1399 (1995).
 
 
 8
 For the reasons described below we affirm the CFC's decision on the first ground articulated by the trial judge. As a result, we do not reach the more interesting question of whether Tax Court settlements affecting years other than those before the Tax Court are ever enforceable absent compliance with section 7121 and its implementing regulations. Since no settlement regarding the 1986 tax year exists in this case, any views we might express on that more interesting question would be mere dicta.
 
 
 9
 Here, Allen and the IRS never concluded any enforceable agreement, not even an oral one. In the CFC, Allen asserted two possible "agreements" in support of his position. First, Allen argued that the IRS was bound by the oral agreement between Allen and the Appeals Division. In the alternative, Allen argued that a second, or at least a modification of the first, settlement agreement was effected between Allen and IRS trial counsel when they jointly represented to the Tax Court that a basis for settlement had been reached.
 
 
 10
 On this appeal, both parties agree that IRS trial counsel had no authority to bind the Government by making, or modifying, a settlement agreement with Allen. Therefore, Allen has abandoned his contention that the agreement with IRS trial counsel to settle the Tax Court case constituted an independent binding settlement agreement. Instead, Allen relies exclusively on the oral agreement with the Appeals Division to justify his claimed $30,000 deduction. According to Allen, the essence of the oral agreement with the Appeals Division was that Allen would be permitted to deduct payments on the note. Any later disagreement with respect to the year of the deduction constituted a mere ambiguity in the agreement's terms that was resolved when Allen consented to take the deduction in the year of the payment.
 
 
 11
 Allen's characterization of the agreement, however, is incorrect as a matter of law. The year in which the deduction was to be taken was not merely an unresolved "term" of the agreement. It went to the very heart of the agreement. As those familiar with the tax law will attest, the year in which a deduction may be taken is often as hotly contested as whether the deduction may be taken at all.
 
 
 12
 Such was the case here. It is clear from the record that at several points in time, the Government was willing to permit Allen to take an ordinary deduction for any payments he made on the note. Thus, the true area of contention between the parties in this case related to the year in which the deduction would be taken. Under well settled principles of contract law, no meeting of the minds can be found when there is a mutual misunderstanding with respect to a material term of the alleged agreement. See, e.g., Krigel v. United States, 662 F.2d 741, 746 (Ct.Cl.1981); Colfax Envelope Corp. v. Local No. 458-3M, 20 F.3d 750, 753 (7th Cir.1994); Restatement (Second) of Contracts § 20 (1979). Here, the parties never reached agreement with respect to a material term of the settlement--the year in which the deduction would be taken. Therefore, despite the apparent agreement between the parties, no contract between Allen and the Government was created. Cf. 26 C.F.R. § 301.7122-1(c) (1995) (allowing case to be reopened even upon acceptance of offer in compromise by reason of mutual mistake of material fact sufficient to cause a contract to be reformed or set aside). The judgment of the CFC is therefore affirmed.
 
 
 13
 PAULINE NEWMAN, Circuit Judge, dissenting.
 
 
 14
 I respectfully dissent, for I cannot agree that our government intended the sharp result that it now defends, and that both the IRS and the courts are powerless to provide remedy.
 
 
 15
 This taxpayer and the Service agreed to settlement of a case before the Tax Court, upon agreement that the $10,000 deduction would be taken in 1980, the tax year in suit, and the $30,000 deduction would be taken when the note was paid, as was done in 1986. The latter provision was thoroughly discussed, for the taxpayer's attorney had debated this provision with government counsel, who was apparently implementing the agreement that had been approved by the chief appeals officer, as shown in the internal IRS documents filed with the Court of Federal Claims. The taxpayer and the IRS jointly moved to dismiss the Tax Court case as settled, the 1980 deficiency was paid by the taxpayer, and the 1986 return was amended.
 
 
 16
 The majority's position that the parties had failed to agree on the tax year in which the remaining $30,000 would be deducted is incorrect. As part of the settlement of the Tax Court case the parties agreed that the deduction would not be taken in 1980 but would be taken when the note was actually paid. These were the same terms this taxpayer had previously accepted with respect to another claim.
 
 
 17
 However, the IRS disallowed the 1986 deduction, arguing that it was not bound by the agreement since it had not been enshrined in a "closing agreement." The record states that the government's lawyer at the dismissal stated that the 1986 return had not yet been audited and thus was not subject to a "closing agreement". Thus the court holds that the taxpayer can not enforce this part of the bargain.
 
 
 18
 It is clear that the settlement affected both the 1980 and the 1986 tax years. The internal records of the IRS show that the settlement terms were approved at the requisite chief appeals officer level. The taxpayer accepted the government's version of what the settlement terms were; this was the basis on which the taxpayer and the government jointly stipulated withdrawal of the case as settled. None of these facts is disputed. Without the promise of the 1986 deduction, there was a failure of consideration for the taxpayer's withdrawal of the Tax Court litigation wherein he had sought to take the deduction in 1980.
 
 
 19
 In short, the government has not respected its part of the bargain. The government's argument that its lawyer was unauthorized to settle these issues comes with poor grace, for the lawyer was implementing the agreement approved by the authorized chief appeals officer. Indeed, the government has never disavowed its agreement that the deduction would be taken when the note was paid.
 
 
 20
 The incomplete paperwork, on which the government now relies, was either simple oversight or sharp practice. I believe it was oversight, for it is inconceivable that the IRS intended to trap this taxpayer into dropping the Tax Court suit wherein he sought to take the deduction in 1980, while intending to renege on the understanding that the deduction could be taken in 1986. If the IRS is indeed powerless to remedy its oversight in order to meet its obligation of fair treatment of taxpayers, it behooves the courts to intervene.
 
 
 
 *
 Allen's insistence, which is uncontroverted, precludes any view that the parties agreed before trial on the year in which the payments were to be deducted. As for the trial milieu, even Allen agrees that IRS trial counsel could not bind the government to the proposition Allen sought. It's the law, not poor grace or sharp practice, that defeats Allen's case